**In re Joseph W. NEWMAN.**

**Misc. No. 89.**

United States Court of Appeals, Federal Circuit.

Jan. 13, 1986.

John P. Flannery, II, Washington, D.C., for petitioner.

Joseph F. Nakamura, Sol., Fred E. McKelvey, Deputy Sol., and Thomas E. Lynch, Associate Sol., Office of the Sol., Arlington, Va., for respondent.

Before MARKEY, Chief Judge, and NEWMAN and BISSELL, Circuit Judges.

## ORDER

NEWMAN, Circuit Judge:

Joseph W. Newman petitions for writ of mandamus ordering the United States District Court for the District of Columbia to vacate or modify its orders dated October 2 and 9, 1985, which authorized the United States Patent and Trademark Office (PTO), through the National Bureau of Standards (NBS), to conduct tests of the device for which Newman seeks a United States patent. We grant the petition in part.

### Background

Petitioner Newman applied for a patent on an invention that he entitled "Energy Generation System Having Higher Energy Output Than Input". The PTO rejected the application, on the basis that the device was a "perpetual motion machine" and thus "impossible", (i.e., not useful within the meaning of 35 U.S.C. § 101). Petitioner denies this label, and asserts that his device works as described in his patent application.

A civil action was brought in the district court under 35 U.S.C. § 145. In view of the conflicting representations before it, the district court appointed a Special Master, former Commissioner of Patents William E. Schuyler, Jr., who concluded that the claimed invention met all of the requirements for patentability. The PTO criticized the Master's report, the court held some of the Master's findings to be clearly erroneous, and at the PTO's request the district court remanded petitioner's patent application for a new examination. The patent examiner then rejected the application under 35 U.S.C. §§ 101, 102, 103, and 112, and ordered that a working model be delivered within 30 days to the NBS for testing.

Meanwhile petitioner had sought relief from this remand by writ of mandamus, which this court denied on May 29, 1985 on the basis that interlocutory review was unnecessary because the asserted errors were of a nature that could be corrected on appeal from the district court's final decision. *In re Newman*, 763 F.2d 407, 226 USPQ 97 (Fed.Cir.1985).

On June 18, 1985, at the suggestion of the district court, the Commissioner served on petitioner a request under Rule 34 of the Federal Rules of Civil Procedure. Rule 34 provides in relevant part:

Any party may serve on any other party a request ... to inspect and copy, test, or sample any tangible things which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served....

\* \* \* \* \* \*

The request shall specify a reasonable time, place, and manner of making the inspection and performing the related acts.

The Commissioner's Rule 34 request required that petitioner promptly transport working models of his device to the Bureau of Standards in Maryland; that the device be relinquished to the NBS for at least seven months; that the device be delivered before the tests and test methods were designed; that only the PTO would be advised in advance of the testing program and who would conduct the tests; that the inventor and his counsel could observe but no expert could be present on petitioner's behalf; that the PTO would control disposition of the working models after the tests, contemplated to be returned to petitioner four days after the trial date; and that the NBS on reasonable notice to petitioner could dismantle or destroy the device.

Upon petitioner's objections, the district court modified the PTO's Rule 34 request in that the NBS was ordered to complete its evaluation and make its report in thirty days rather than seven months; and Newman, his counsel, and one other person would be allowed to observe "any final tests". The NBS was "expressly permitted to render any or all of the devices inoperable in part or in whole if necessary to make its determinations aforesaid", and the requirement that prior notice of dismantling or destruction be given to petitioner was not included in the court's order.

### Analysis

Because this court, and only this court, has jurisdiction over any appeal from a final decision in this case, it has jurisdiction to hear and decide this petition. *In re Mark Industries*, 751 F.2d 1219, 224 USPQ 521 (Fed.Cir.1984); *Mississippi Chemical Corp. v. Swift Agricultural Chemicals Corp.*, 717 F.2d 1374, 219 USPQ 577 (Fed. Cir.1983).

■ Petitioner asserts that the test conditions authorized by the district court are unreasonable, and thus that the order exceeds the district court's discretionary authority. The petitioner alleges irreparable harm if this court does not intervene. We conclude that a prima facie case of irreparable harm has been made by the district court's authorization that the NBS may destroy petitioner's machine, and is supported by other irregularities in the proposed procedures. Mandamus is appropriate because no subsequent appeal will necessarily redress any damage. *See* 9 J. Moore, B. Ward & J. Lucas, Moore's Federal Practice ¶ 110.28 (2d ed. 1985). *See also Schlagenhauf v. Holder*, 379 U.S. 104, 110, 85 S.Ct. 234, 238, 13 L.Ed.2d 152 (1964) (review by mandamus is appropriate in view of the "undecided question" of the appellate court's power in these "unusual circumstances").

Petitioner states that during the course of patent prosecution he had offered the machine to the PTO for testing. The examiner refused these offers, and the deputy solicitor refused to view the machine when he was in Mississippi for depositions in this action. Petitioner asserts that this history shows his past readiness and willingness to produce his machine for testing, and that the PTO having refused these opportunities can not now insist on such tests. Petitioner also states his willingness now to produce the machine, under reasonable conditions.

■ We have recently held that the PTO is entitled to reject an application for insufficient proof when a device by its nature occasions reasonable skepticism as to its operativeness under § 101. *Fregeau v. Mossinghoff*, 776 F.2d 1034, 227 USPQ 848 (Fed.Cir.1985). *See also In re Langar*, 503 F.2d 1380, 183 USPQ 288 (CCPA 1974). We discern no abuse of discretion in the holding of the district court that additional

tests of petitioner's device should be conducted.

When petitioner had objected to the "extraordinary burden" imposed by the test conditions authorized by the district court, the court responded that this "unprecedented" device "needs precedented [*sic:* unprecedented?] procedural adaptations of the Federal Rules". However, the Federal Rules of Civil Procedure are more than guidelines for orderly litigation; they ensure that the proceedings are conducted fairly, with the objective of uncovering the truth, and in accordance with fundamental principles of due process.

We are not told why routine Rule 34 safeguards must in this case be denied, nor why it is essential that the NBS have authority to destroy the machine in order to determine if it operates as described. The record before us contains no allegation that the machine does not correspond with the specification, and we do not here deal with any basis for rejection other than the asserted lack of utility under § 101.

The PTO represents in its brief that the NBS will not dismantle or destroy the device until it has first determined that the device works in accordance with the specification. From this, we assume that the purpose of the destruction would be to determine not if, but how, it works. The PTO is not a guarantor of scientific theory and, although the record shows that the laws of thermodynamics were debated before the district court, it is not the province of the PTO to ascertain the scientific explanation. *See In re Anfhauser,* 399 F.2d 275, 283, 158 USPQ 351, 357 (CCPA 1968) (applicant "is not legally required to comprehend the scientific principles on which the practical effectiveness of his invention rests.") Thus, although we encourage petitioner to cooperate in the testing program, at the risk of adverse inferences as mentioned by the district court, we agree with petitioner that his device should not be dismantled or destroyed without his consent.

Rule 34 discovery is a common procedure, as is inter partes testing in general, arising in actions where there is a need to conduct inspections and tests for evidentiary purposes. Such tests routinely are made in the presence of the opposing party, and the test data are routinely provided to all parties. *Wagoner v. Barger,* 463 F.2d 1377, 1382, 175 USPQ 85, 88 (CCPA 1972) ("the results of tests made by one party ... without notice to, and in the absence of, the other party ... [are] for that reason alone entitled to little or no weight"); *Congoleum Industries, Inc. v. Armstrong Cork Co.,* 319 F.Supp. 714, 716, 168 USPQ 263, 264 (E.D.Pa.1970) ("the established doctrine that evidence of experiments conducted by an interested party, in the absence of his adversary, is always received with suspicion and given only negligible probative value").

The objectivity of the tester is a fundamental rule not only of evidence but of conscience. The Bureau of Standards enters this arena with the aura of a national laboratory of scientific distinction, untainted by partisan obligation. Yet the record relates that a spokesman of the NBS criticized to the press the machine that the NBS had not yet tested. Petitioner advises that there was submitted by the PTO to the district court the affidavit of an employee of the NBS, criticizing the machine that he had neither seen nor tested. These events support petitioner's argument that the safeguards of inter partes representation should not be denied.

Petitioner also complains that the PTO has not undertaken, or been ordered, to be bound by the findings of the NBS. However, it is not the PTO but the district court that must decide this case under 35 U.S.C. § 145. The court has not abused its discretion by declining to decide in advance how the test results will be treated.

We conclude that the district court exceeded its discretionary authority in departing from standard procedures and safeguards implementing Rule 34, to the extent that fundamental fairness is absent from the tests as authorized. The court presented no reason for barring petitioner from observing all the tests on his device, or from knowing in advance what tests are to

be conducted. Such procedures are highly irregular, and taint the evidentiary value of the test results. We have been directed to no instance where they have been condoned.

Therefore, IT IS ORDERED THAT:

The stay of the district court's order of October 2 as modified on October 9 is lifted, and compliance therewith is ordered, subject to the following modifications:

(a) Petitioner is to produce his device for testing at the NBS within fourteen days after notification of this order.

(b) Prior to said production date, the PTO shall request the NBS to design a testing program that tests the utility set forth in the specification but does not require dismantling or destruction of the device; the NBS shall notify the parties of that program before testing begins.

(c) Both parties shall have the right to observe all tests.

(d) Upon issuance of the NBS' test report, copies of which shall be supplied to both parties, petitioner's device shall forthwith be returned to petitioner.

In all other respects the district court's order is affirmed. Attention is directed to the requirement that the tests be completed and the report issued within 30 days after delivery of the device.