**In re INNOTRON
DIAGNOSTICS, Petitioner.**

**Misc. No. 111.**

United States Court of Appeals,
Federal Circuit.

Aug. 27, 1986.

Alicia Rosenberg of Blecher, Collins & Weinstein, Los Angeles, Cal., for petitioner. With her on brief were Maxwell M. Blecher and Donald R. Pepperman of Blecher, Collins & Weinstein, Los Angeles, Cal. Also on brief was Harold L. Jackson of Jackson & Jones, Tustin, Cal.

Jeffrey I. Weinberger of Munger, Tolles & Olson, Los Angeles, Cal., for respondent Abbott Laboratories. With him on brief were Gregory P. Stone and Steven M. Perry of Munger, Tolles & Olson, Los Angeles, Cal.

Before MARKEY, Chief Judge, FRIEDMAN and RICH, Circuit Judges.

## ORDER

MARKEY, Chief Judge.

This petition for mandamus seeks to overturn an order of the district court separating issues for trial. We deny the petition.

On April 1, 1985, Innotron Diagnostics (Innotron) sued Abbott Laboratories (Abbott) in the U.S. District Court for the Central District of California, No. 85–2207, alleging that Abbott's marketing activities (contracts tying its reagents to its analyzer, bundling its reagents with other products, and manipulating its analyzer software to exclude Innotron's reagents) violated Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2 (1982). Jurisdiction was based on 28 U.S.C. §§ 1331, 1332, and 1337.

On April 19, 1985, Abbott sued Innotron in the same court, No. 85–2614, alleging infringement of its U.S. Patent No. 4,492,-762 ('762), issued by the Patent and Trademark Office (PTO) January 8, 1985, for a method of testing for substances in a patient's blood. Jurisdiction was based on 28 U.S.C. § 1338(a).

Innotron moved to dismiss Abbott's complaint as stating a compulsory counterclaim to its antitrust action. Without ruling specifically on the motion, the district court ordered consolidation of the cases pursuant to Fed.R.Civ.P. 42(a).

Abbott moved to stay Innotron's antitrust claims and for a separate, early trial of its patent infringement claim. Over Innotron's objection, the district court ordered that the patent issues "will be severed and tried first before the antitrust issues," but did not stay discovery in the antitrust case. The court set discovery to close in the patent case in June 1986, and in the antitrust case on August 31, 1987.

Innotron answered Abbott's complaint on July 17, 1985, acknowledging district court jurisdiction based on 28 U.S.C. § 1338(a), denying infringement, and asserting as affirmative defenses that the '762 patent was invalid under 35 U.S.C. §§ 102(b) and 103, and that the '762 patent was unenforceable because of inequitable conduct in the PTO (concealment of adverse tests and misrepresentation of prior art), and because the patent had been misused in an illegal tie-in. Innotron accompanied its answer with an antitrust counterclaim in which it repeated verbatim all those affirmative defenses, adding allegations of relevant market, predatory intent, and that Abbott knew its patent was invalid under § 103 when it sued for infringement.

On September 20, 1985, Innotron amended its original antitrust complaint, by adding the same allegations as those in its counterclaim, and demanded a jury trial.

When Innotron refused Abbott's suggestion that the antitrust counterclaim and the patent issues be separately tried, Abbott moved under Fed.R.Civ.P. 42(b) to "sever" and "separately try" the patent issues.

On November 25, 1985, a hearing was held at which the court's "tentative ruling" to "sever" was fully briefed by the parties.[1] Innotron argued that: (1) its affirmative defenses of patent invalidity and unenforceability were so factually interwoven with its antitrust counterclaim as to preclude effective separation; (2) separation of interwoven issues would be a denial of a fair trial; and (3) separation would be burdensome because this litigation has placed it in straitened financial circumstances.

Abbott responded that denying separation would: (1) require extended delay of the patent trial, because discovery on the increasingly broad and complex antitrust issues was not even scheduled to be complete for well over a year; (2) unduly complicate presentation of the patent issues; and (3) reverse the court's earlier rulings. Abbott also argued that trial of the patent issues would render it unnecessary to try many of Innotron's antitrust claims.

On November 27, 1985, the district court ordered the issues in Innotron's counterclaim separated for trial, Fed.R.Civ.P. 42(b), from the patent issues. It further ordered Innotron's counterclaim consolidated with Innotron's original antitrust complaint for trial following trial of the patent issues.

On January 2, 1986, Innotron filed a petition for writ of mandamus, 28 U.S.C. § 1651, in the U.S. Court of Appeals for the Ninth Circuit, asking that the district court be ordered to reconsolidate the antitrust counterclaim for trial with the patent issues. Saying the Ninth Circuit had exclusive jurisdiction over its petition, Innotron argued that the separation order was issued under the district court's inherent authority to govern the order of claims and evidence presented, and was therefore within the Ninth Circuit's "supervisory authority" over the district courts within its region. On January 17, 1986, Abbott filed a motion to dismiss the petition, saying this court had exclusive jurisdiction.

On March 11, 1986, the Ninth Circuit issued this order:

> This request for mandamus relief should be considered by the United States Court of Appeals for the Federal Circuit. The petition is denied without prejudice to renewal if the Federal Circuit determines that it has no jurisdiction. *See* 28 U.S.C. § 1295; *In re Precision Screen Machines, Inc.*, 729 F.2d 1429 [sic, 1428, 221 USPQ 1034] (Fed.Cir. 1984).

### Issues Presented

(1) Whether this court has appellate jurisdiction over the case.

(2) Whether this court will entertain the present petition.[2]

(3) Whether the petition must be granted because the district court abused its discretion in ordering a separate trial of the patent issues and those raised in Innotron's antitrust counterclaim.

### ANALYSIS

(1) *Appellate Jurisdiction Over the Case*

■ The district court's jurisdiction over Abbott's patent infringement complaint,

---

1. The parties consistently, and the district court on occasion, have used "sever" and "separate" as synonyms. The court's action here was a separation of issues for trial, not a "severance." As noted in *Atari, Inc. v. JS & A Group, Inc.*, 747 F.2d 1422, 1430, 223 U.S.P.Q. 1074, 1080 (Fed. Cir.1984) (in banc):

   > [T]he purpose of ordering separate trials under Rule 42(b) is to promote convenience, expedition, and economy, and to avoid delay and prejudice. Action on the motion is procedural, not substantive, and has no effect on jurisdiction.... Nor does separation under Rule 42(b) "sever" claims. *See Spencer, White, & Prentis, Inc. of Conn. v. Pfizer, Inc.*, 498 F.2d 358, 361–62 (2d Cir.1974). Indeed, a

power to sever claims under Rule 42(b) was rejected by its drafters. 5 J. Moore's Federal Practice ¶ 42.03[11] (2d ed. 1982).

2. Both parties suggest that this court should take the opportunity presented by the present petition to specify all the procedural areas over which this court will and will not exercise mandamus authority in respect of district court orders. We decline the suggestion. Whether the principles and decisional guidelines applicable to the present petition would be applicable and controlling in deciding presently unknown, but presumably different, petitions challenging different orders rising out of different fact patterns must await the event.

No. 85–2614, was based "in whole" on 28 U.S.C. § 1338(a). The district court's order consolidating that complaint with Innotron's earlier filed antitrust complaint, No. 85–2207, was entirely procedural, *see Cole v. Schenley Industries, Inc.,* 563 F.2d 35, 38 (2d Cir.1977), and in no way ousted the district court of jurisdiction over that complaint under § 1338(a). At the time the district court issued the separation order, therefore, jurisdiction of the entire consolidated case was based "in part" on 28 U.S.C. § 1338(a). Hence this court has exclusive jurisdiction of an appeal from the final judgment in the case. 28 U.S.C. § 1295(a)(1); *see Interpart Corp. v. Imos Italia,* 777 F.2d 678, 680–81, 228 U.S.P.Q. 124, 125–26 (Fed.Cir.1985); *see also Atari, Inc. v. JS & A Group, Inc.,* 747 F.2d 1422, 1430, 223 U.S.P.Q. 1074, 1080 (Fed.Cir. 1984) (in banc).

The briefs contain substantial discussion about who-filed-what-first and about labels attachable to particular filings. When the smoke is cleared, however, three facts stand forth: (1) this is one lawsuit; (2) its outcome will be substantially governed by considerations unique to the field of patent law; and (3) the decision on this petition is governed by patent law considerations.

In *Atari,* this court left open, because it was not before us, the question of whether the filing and presence of a non-frivolous complaint for patent infringement, and its consolidation with a suit based on a nonpatent claim, would create appellate jurisdiction in this court over an appeal from the final judgment in the case. In *Interpart,* we closed that door, answering in the affirmative.[3]

Abbott elected to assert patent infringement in a separate complaint, but, as Innotron argued, that claim may also have been filed as a counterclaim. The district court's consolidation of the cases produced the same status as that which would have obtained if Abbott had filed its patent claim as a counterclaim. As Innotron now argues before us, the resulting position is the same, and the district court, in consolidating the cases, characterized Abbott's suit as a "counterclaim." It would, of course, be incongruous to hold that consolidation of a separate suit, as in *Interpart,* is distinct, in relation to this court's jurisdiction, from the presence of a counterclaim raising the same allegations of patent infringement that are not "immaterial, inferential, [or] frivolous," or a "mere joinder." S.Rep. No. 275, 97th Cong., 1st Sess. 20 (1981), *reprinted in* 1982 U.S.Code Cong. & Ad.News at 11, 30.

▇ Thus, whether allegations of patent infringement be filed and maintained as a viable, non-frivolous counterclaim in a non-patent case, or as a separate complaint which is then consolidated with the non-patent case, the district court's jurisdiction is based "in part" on § 1338(a) and this court must exercise its exclusive appellate jurisdiction over the entire case. 28 U.S.C. § 1295(a)(1).

Thus the mere labeling and sequencing of pleadings in the trial tribunal cannot be allowed to control every exercise of this court's appellate jurisdiction. Nor can the mere presence in a case of "issues" other than those within a substantive field within this court's exclusive appellate jurisdiction serve to oust this court of the jurisdiction it must and would otherwise exercise in carrying out its mission. *See Atari,* 747 F.2d at 1436, 223 U.S.P.Q. at 1084 ("'cases' will be within the jurisdiction of this court").[4]

---

**3.** In exercising its appellate jurisdiction over the merits of the entire case incorporated in the final judgment, this court will apply its precedents in determining issues of patent law and will apply the established discernable precedents of the involved regional circuit in determining any non-patent issues in the case. *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.,* 750 F.2d 903, 223 U.S.P.Q. 982 (Fed.Cir.1984); *Atari, Inc. v. JS & A Group, Inc.,* 747 F.2d 1422, 223

U.S.P.Q. 1074 (Fed.Cir., 1984); *Panduit Corp. v. All States Plastic Manufacturing Co.,* 744 F.2d 1564, 223 U.S.P.Q. 465 (Fed.Cir.1984).

**4.** As indicated in *Atari,* 747 F.2d at 1436, 223 U.S.P.Q. at 1084, this court will not have jurisdiction over an appeal from a district court judgment where the district court's jurisdiction was based solely on diversity, even though the case may involve interpretation, viability, and

This court, therefore, has exclusive jurisdiction over any appeal from the final judgment in this case.

(2) *Authority to Entertain the Petition*

Citing this court's indications that it lacks "supervisory authority" over the district courts, Innotron says this court has no authority to grant writs of mandamus relating to what it calls "procedural" orders separating issues for trial.

Arguing that "supervisory authority" accompanies appellate jurisdiction over the final judgment, Abbott says this court has the same supervisory authority as that of the regional circuits.

We reject both extremes.[5]

The mandamus statute, 28 U.S.C. § 1651, is not an independent statutory grant of jurisdiction. *Baker Perkins, Inc. v. Warner & Pfleiderer Corp.*, 710 F.2d 1561, 1565, 218 U.S.P.Q. 577, 579 (Fed.Cir.1983). The statutory grant of jurisdiction to each regional court of appeals, 28 U.S.C. § 1294, provides appellate jurisdiction over judgments of district courts located within its geographical circuit "[e]xcept as provided in sections 1292(c), 1292(d), and 1295 of this title." With respect to district courts, the grant to this court is found in 28 U.S.C. §§ 1295(a)(1) and 1295(a)(2), which provide appellate jurisdiction of judgments of any district court when the jurisdiction of that court was based, in whole or in part, on 28 U.S.C. § 1338 or 28 U.S.C. § 1346, (The Little Tucker Act) respectively, and in § 1295(a)(4)(C) when the action was filed in the district court as authorized in 35 U.S.C. §§ 145 or 146.

Mandamus was traditionally employed "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943); *see also Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 382, 74 S.Ct. 145, 147, 98 L.Ed. 106 (1953). However, the regional courts of appeals have increasingly employed the writ in implementing their supervision of district courts. *See* Annot., 57 L.Ed.2d 1203 (1979); Note, *Supervisory and Advisory Mandamus Under the All Writs Act*, 86 Harv.L.Rev. 595 (1973).

Use of mandamus in exercising "supervisory authority" has been approved "in proper circumstances" by the Supreme Court. *La Buy v. Howes Leather Co.*, 352 U.S. 249, 255, 77 S.Ct. 309, 313, 1 L.Ed.2d 290 (1957).

In *La Buy*, however, the Court was dealing with a court having appellate jurisdiction over judgments of district courts whose *location* is within its circuit, 28 U.S.C. § 41, not with this court, whose appellate jurisdiction over judgments of district courts is determined by the basis for the district court's *jurisdiction*.

Thus the key phrases useful in determining whether this court will entertain petitions to mandamus a district court are "in aid of its jurisdiction" in § 1651 and the Supreme Court's reference to "in proper circumstances" in *La Buy*.

### (a) "In Aid of Its Jurisdiction"

■ Where this court would have jurisdiction over an appeal from a final judgment, it clearly has power under § 1651 to

---

applicability of a patent license contract, and those determinations may require consideration of defenses raising patent validity and infringement issues. *See Schwarzkopf Development Corp. v. Ti-Coating, Inc.*, 800 F.2d 240, 244 (Fed. Cir.1986).

**5.** Courts of appeals have traditionally construed their mandamus authority "to extend to cases within their actual *or potential* appellate jurisdiction." *General Electric Co. v. Byrne*, 611 F.2d 670, 672 (7th Cir.1979); *see also In re President & Directors of Georgetown College, Inc.*, 331 F.2d

1000, 1004–06 (D.C.Cir.), *cert. denied*, 377 U.S. 978, 84 S.Ct. 1883, 12 L.Ed.2d 746 (1964). Similarly, mandamus authority of this court attaches when the jurisdiction of the district court is based, in whole or in part, on 28 U.S.C. § 1338(a) or § 1346. *See In re Newman*, 782 F.2d 971, 973, 228 U.S.P.Q. 450, 452 (Fed.Cir. 1986); *Maier v. Orr*, 754 F.2d 973, 980 (Fed.Cir. 1985). In *Atari, Inc. v. JS & A Group, Inc.*, 747 F.2d at 1431, 223 U.S.P.Q. at 1080, this court observed that "[a]ll appellate jurisdiction is prospective."

overturn a district court order that would prevent that appeal or would otherwise frustrate this court's exercise of its proper jurisdiction.[6] That much is clear.

More troublesome are petitions seeking to overturn district court orders that would not necessarily frustrate this court's appellate jurisdiction. Such petitions may be categorized as: (1) those implicating responsibilities of regional circuit courts for supervising, administering, overseeing, and managing the courts within the circuit (e.g., assignment of judges, adjustment of calendars, transfer of case to another district, reference to master); (2) those that arise in all types of cases, but do not directly implicate the patent or Little Tucker Act doctrinal jurisprudence of this court (e.g., disqualification of counsel); and (3) those that do directly implicate, or are intimately bound up with and controlled by, the patent and Tucker Act doctrinal jurisprudential responsibilities of this court (e.g., separate trial of patent issues; refusal to apply 35 U.S.C. § 282; court-ordered tests for utility).

As discussed below, this court has disavowed "supervisory" authority over the district courts. In so doing, this court also recognized that a writ would not be "in aid of its jurisdiction" if issued on petitions in categories (1) and (2). The court might very well, however, aid its jurisdiction (and its mission as well) when it issues a writ in response to a petition in category (3).

The present petition challenges an order intimately bound up with and controlled by the law of patents (e.g., the relationship of

patent infringement defenses to allegations in "patent type antitrust" claims). Correct understanding and application of that law are required in the district court's exercise of its discretion. The nature, length, and complexity of the record on appeal can be directly affected by whether the challenged separation order is overturned. The petition is thus within category (3).

■ In sum, this court will entertain petitions for writs in relation to an order separating or refusing to separate patent issues for trial, because such writs could be in aid of this court's jurisdiction, and Innotron's argument that this court's disavowal of "supervisory authority" requires transfer of this petition to the Ninth Circuit is unavailing.[7]

### (b) "In Proper Circumstances"

Similarly unavailing is Abbott's argument that this court has supervisory authority to issue any writ where, as here, it has appellate jurisdiction, for the court has carved out areas in which, on considerations of policy, comity, and its place in the judicial system, it *should not* entertain petitions for writs. In so doing, it has limited the exercise of its power to cases involving the "proper circumstances" referred to without detailed description in *La Buy*.

Though this court has employed different phrases in deciding whether to entertain petitions for mandamus, the cases cited in the accompanying footnote reflect the presence and absence of "proper circumstances".[8]

6. References to writs overturning orders should be read as including writs requiring positive action and those reversing actions not set forth in a formal order.

7. Though without effect upon our disposition, Innotron's jury trial assertions support the view that a writ relating to separation of patent issues for jury trial may be entertained as potentially "in aid of" our jurisdiction: "Whatever differences of opinion there may be in other types of cases, we think the right to grant mandamus to require jury trial where it has been improperly denied is settled." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 511, 79 S.Ct. 948, 957, 3 L.Ed.2d 988 (1959). Similarly, in *Bereslavsky v.*

*Caffey*, 161 F.2d 499, 501 (2d Cir.), *cert. denied*, 332 U.S. 770, 68 S.Ct. 82, 92 L.Ed. 355 (1947), the court, in vacating an order denying jury trial, said "[t]here can be no doubt of our power in such a case to issue a writ of mandamus, as it is in aid of our jurisdiction."

8. *See, e.g., In re Newman*, 782 F.2d 971, 228 U.S.P.Q. 450 (Fed.Cir.1986) (writ issued to modify discovery order); *In re Newman*, 763 F.2d 407, 226 U.S.P.Q. 97 (Fed.Cir.1985) (writ denied to vacate remand of patent application to PTO; not "in aid of" jurisdiction); *In re Mark Industries*, 751 F.2d 1219, 1222, 224 U.S.P.Q. 521, 523 (Fed.Cir.1984) (writ issued to vacate order violating 35 U.S.C. § 282; "This court has no ad-

This court recognized that *administration, supervision, management,* and *overseeing* of the courts within a regional circuit are the sole province of that regional circuit and its Circuit Council. Unlike those bodies, this court is not an "administrator," "supervisor," "manager," or "overseer" of the district courts.[9] Hence this court said it lacked the general authority set forth in 28 U.S.C. § 332, and that it lacked "administrative authority," "direct supervisory authority," and "general authority." Those phrases were aimed primarily at petitions in category (1), because this court has no congressionally granted authority to inject itself into the business-like elements of the administration of justice within the regional circuits.

Those phrases have also been employed in refusing to entertain petitions in category (2), because this court desired to avoid imposition on a district court of guidance that might differ from the guidance provided by that court's regional circuit in relation to the same procedural rulings in other types of cases.[10]

Whether and under what sets of facts patent issues should be separated for trial, though a procedural matter, raises a question that does not fall within the general administrative area of court business that must remain, in all cases, including patent cases, the sole province of the regional circuits. Further, that question arises only in patent cases and not in cases over which the regional circuit courts exercise appellate jurisdiction. Hence no potential exists for burdening the district courts with different guidance on substantive law, and the potential for different guidance on procedure is minimal.[11]

█ In sum, the "proper circumstances" warranting entertainment by this court of petitions for writs to a district court in a patent case are those, and only those, in

ministrative authority over any district court."); *In re Oximetrix,* 748 F.2d 637, 643, 223 U.S.P.Q. 1068, 1073 (Fed.Cir.1984) (writ denied to vacate stay; not "in aid of" jurisdiction; "This court lacks the general authority over district courts exercisable, for example, under 28 U.S.C. § 332."); *In re International Medical Research Associates,* 739 F.2d 618, 619 (Fed.Cir.1984) (writ denied to vacate order disqualifying counsel as not "in aid of" jurisdiction; "[T]his court is devoid of [supervisory] authority."); *In re Precision Screen Machines, Inc.,* 729 F.2d 1428, 221 U.S. P.Q. 1034 (Fed.Cir.1984) (writ denied; no abuse of discretion and not "in aid of" jurisdiction); *In re Snap-On Tools,* 720 F.2d 654, 220 U.S.P.Q. 8 (Fed.Cir.1983) (writ issued "to aid the jurisdiction of this court."); *C.P.C. v. Nosco Plastics, Inc.,* 719 F.2d 400, 401 (Fed.Cir.1983) (writ denied to vacate order disqualifying counsel; not "in aid of" jurisdiction; "Th[e Federal Circuit] has no general authority to issue a writ of mandamus directed to a district court judge sitting in another circuit."); *Mississippi Chemical Corp. v. Swift Agricultural Chemicals,* 717 F.2d 1374, 1380, 219 U.S.P.Q. 577, 582 (Fed.Cir.1983) (writ issued to enter summary judgment; "Unlike the other courts of appeals, we have no general supervisory authority over district courts."); *Baker Perkins, Inc. v. Werner & Pfleiderer Corp.,* 710 F.2d 1561, 218 U.S.P.Q. 577 (Fed.Cir.1983) (writ denied to vacate order to revive reissue application); *cf. Petersen Manufacturing Co. v. Central Purchasing, Inc.,* 740 F.2d 1541, 1552, 222 U.S.P.Q. 562, 570 (Fed.Cir.1984) ("instructions" denied to reassign case to different judge; "Unlike other Circuit Courts of Appeal, ... we

have no direct supervisory authority over district courts.").

*See also Godtfredsen v. Banner,* 598 F.2d 589, 202 U.S.P.Q. 7 (C.C.P.A.1979) (writ denied; no jurisdiction to review Commissioner's decision to allow interference); *Duffy v. Tegtmeyer,* 489 F.2d 745, 180 U.S.P.Q. 317 (C.C.P.A.1974) (writ denied in interference; not "in aid of jurisdiction"); *Loshbough v. Allen,* 56 C.C.P.A. 913, 404 F.2d 1400, 1405, 160 U.S.P.Q. 204, 208 (mandamus appropriate where "in aid of our jurisdiction").

9. The language is merely illustrative, there being no intent here to explicate an appropriate balance between the proper autonomy of the district courts and the responsibilities of the regional circuit courts and councils.

10. Decisions of the Court of International Trade, the Claims Court, and the Boards of Contract Appeals are appealable only to this court, as are those of the Merit Systems Protection Board in non-discrimination cases, the International Trade Commission in § 337 cases, and most of those from the Patent and Trademark Office. The problem of "serving two masters" does not arise in those cases.

11. The standard of review applicable to petitions for mandamus challenging district court orders is abuse of discretion. *See La Buy v. Howes Leather Co.,* 352 U.S. 249, 257, 77 S.Ct. 309, 314, 1 L.Ed.2d 290 (1957). That standard is the same in all courts of appeals.

which the patent jurisprudence of this court plays a significant role.[12] Those circumstances may or may not be present in a future case. They are present here.

■ The present petition challenges an order implicating the jurisprudential responsibilities of this court in the field of patent law. "Patent type antitrust" counterclaims are routinely filed in response to patent infringement complaints. If petitions for writs challenging separation for trial orders in such cases were directed to twelve regional circuits, a risk of differing resolutions (and consequent forum shopping) would be created. The provision of uniform guidance on just and expeditious resolution of patent validity and infringement issues, by separation for trial of complex, time-consuming, costly, and potentially moot antitrust issues, is clearly within the congressionally envisioned role of this court, i.e., to contribute to doctrinal stability in the field of patent law.

The challenge presented in the present petition thus constitutes a "proper circumstance" warranting entertainment of the petition by this court. That a petition is appropriately entertained by this court, however, does not mean that it will be granted.[13]

### 3. *Abuse of Discretion*

■ It may contribute to the elucidation of the question to note that the present case involves two species of antitrust claims. One may be described as "pure" Sherman Act claims, e.g., those set forth in Innotron's original complaint. The other may be described as "patent type anti-

trust" claims, e.g., those set forth in Innotron's counterclaim and in the amendment of its original complaint, (e.g., enforcement of patent knowingly obtained through inequitable conduct, tie-in with the patent of unpatented products). The present petition concerns only a "patent type antitrust" counterclaim.

Rule 42(b) reads:

The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

In deciding whether one trial or separate trials will best serve the convenience of the parties and the court, avoid prejudice, and minimize expense and delay, the major consideration is directed toward the choice most likely to result in a just final disposition of the litigation, *see* 9 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2388 (1971). In the present instance, the district court followed precisely that guideline.

The district court noted cases reflecting the now-standard practice of separating for trial patent issues and those raised in an antitrust counterclaim. Abbott has cited twenty-three of those cases from eight regional circuits. Innotron's sole response is

---

**12.** The same is true in respect of this court's "Little Tucker Act" jurisprudence.

**13.** Having indicated that this court lacked what could be collectively called "supervisory" authority, this court has simply denied certain petitions. Absent a request for transfer, no need has appeared for this court either to transfer the petition to the involved regional circuit or to decide the petition in accord with the discernable law of that circuit, there being no time bar relating to petitioner's filing in that circuit and no reason to clutter that circuit's files with transferred petitions which may not be pursued by petitioner.

In *Panduit Corp. v. All States Plastic Manufacturing Co.*, 744 F.2d at 1574–75, 223 U.S.P.Q. at 471, this court indicated that, when it was necessary for it to decide procedural matters, it would do so in accord with the discernable law of the involved circuit when those matters "did not pertain to patent law." *Panduit* was an appeal, not a petition for mandamus. An issue in the appeal was whether an order disqualifying counsel was appealable. The court followed Ninth Circuit law holding that it was, and disposed of the issue in accord with the discernable law of that circuit.

the mere assertion that it filed its original antitrust complaint first. The assertion is irrelevant.

First, Innotron focuses here on separation of its antitrust counterclaim and not at all on separation of its original antitrust claim. Innotron accompanied its one mention of the court's prior separation of its Sherman Act issues with the specific statement that "the order from which Innotron seeks relief concerns Innotron's counterclaims," in which Innotron says Abbott "fraudulently" procured and in bad faith enforced its patent.

Second, of the applicable considerations (expedition, economy, prejudice, convenience, expense, a just final disposition, preservation of the right to jury trial), none is affected in the slightest by the circumstance of Innotron's having filed its original Sherman Act antitrust complaint first.

Third, Innotron's "patent type" antitrust counterclaim filed in response to Abbott's complaint for patent infringement is indistinguishable from such counterclaims filed in response to complaints for patent infringement in the twenty-three cases cited by Abbott.

Moreover, it is clear that the present separation order was appropriate for the same reasons listed in the cases Abbott cites: (1) Economy is served because in the trial of the patent issues the validity of the patent and Innotron's affirmative defenses will be determined and will become law of the case and thus removed from trial on the original antitrust issues; (2) Convenience of all is served in trying the less complex patent issues first; (3) Expedition is served because the patent issues on the present schedule will be ready for trial more than a year before the antitrust issues can be made ready; [14] (4) Avoidance of prejudice and confusion is served in trying

first the patent issues, without injecting the different counterclaim issues which require different proof and different witnesses.

Innotron blows hot and cold, stating at one point (incorrectly) that resolution of the patent issues can affect only a minuscule portion of its antitrust counterclaim, and at another point (correctly) that most of the facts and issues in the patent trial are overwhelmingly intertwined and overlapping with those in its antitrust counterclaim. Innotron put identical charts in each of its two memoranda to illustrate the substantial identity of its affirmative defenses and many of the allegations in its antitrust counterclaim.

Indeed, Innotron repeatedly states: *"Each of these affirmative defenses also forms the basis of an Innotron antritrust counterclaim filed in the patent case"* (emphasis Innotron's); "The Innotron antitrust counterclaims ... rest on precisely the same evidence as Innotron's affirmative defenses;" and "the antitrust counterclaims separated ... are based on the same facts as the patent issues." Thus its own statements make clear that Innotron will have in the patent trial a determination on all of the basic evidence and facts on which its claim of "patent type" antitrust violation is based. If it prevails at the trial on its affirmative defenses it need not again prove the same issues at the antitrust trial. Innotron's entire and extended argument, insisting on the substantial identity of the facts and evidence supporting its affirmative defenses and its antitrust counterclaim, is thus self-defeating. It clearly cannot serve to require the court to accept the delay and complexification of the patent trial that would result from a grant of its petition.[15]

---

14. Innotron's Memoranda on appeal (totalling 56 pages, plus 11 exhibits) are replete with pleas of financial strain, yet it insists on a single trial more than a year later, with no explanation of why or in what respect it would thereby save money. It is undisputed that the antitrust claims raise more complex issues and that discovery on those issues will be far more complex and wide-ranging than will discovery pertaining

to the patent issues (which is virtually complete), and that the additional fourteen months set for discovery on the antitrust claims are fully warranted.

15. Incredibly, Innotron repeatedly and incorrectly states that the district court ordered two trials on "inseparable and interwoven issues." Innotron nowhere supports its unspoken as-

Innotron devotes major segments of its memoranda to an assertion that the challenged order constitutes a denial of its constitutional right to a jury trial guaranteed by the Seventh Amendment.[16] The argument is without merit. First, it is based on Innotron's false assumption that the same issues tried in the patent case will be tried again in the antitrust case. Second, separate jury trials are appropriate where the issues to be tried in each are, as here, "distinct and separable,"[17] cf. *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931), and when, as here, separate trials would not constitute a "clear and indisputable" infringement of the constitutional right to a fair trial. *See Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 384, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953). Third, even in the unlikely event that the same testimony and documents may be placed before two juries, Innotron's argument would nonetheless fail, for it has been well said that "the prohibition is not against having two juries review the same *evidence*, but rather against having two juries *decide* the same *essential issues*." *Paine, Webber, Jackson & Curtis, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 587 F.Supp. 1112, 1117, 223 U.S.P.Q. 888, 892 (D.Del.1984) (emphasis in original). Fourth, there is no danger, contrary to Innotron's assertion, of inconsistent jury verdicts and, as the district court found, the potential for jury confusion would be lessened, not increased, by separate trials on the patent and antitrust issues.

In sum, the challenged order will *enhance* the *parties'* right to jury trial by making the issues the jury must consider less complex. The order therefore fully passes muster under the Seventh Amend-ment to the Constitution, and the district court clearly did not deny Innotron's right to fair trial.

## CONCLUSION

Innotron has failed to show the "exceptional circumstances" necessary to justify the writ sought and to meet its burden of establishing that its right to the writ is "clear and indisputable." *Will v. United States*, 389 U.S. 90, 96, 88 S.Ct. 269, 274, 19 L.Ed.2d 305 (1967). On the contrary, in issuing the challenged order separating the patent issues for trial, the district court in no manner abused its discretion, acted on ample authority in the cases, and contributed to the potential for the fairest and most expeditious resolution of all claims of both parties.

Accordingly, it is ordered:

That the petition is denied.

---

sumption that if it fails in the patent trial to establish, for example, its affirmative defense of inequitable conduct in the PTO, it would be entitled to try that issue again in the antitrust trial.

16. Innotron argues as though it alone, and not Abbott, is entitled to what Innotron calls a "fair" trial. The district court's order clearly serves the goal of Rule 42(b), which is directed to the interests and convenience of both parties and of the court.

17. Only the patent issues are the same. If Innotron prevails on them in the patent issues trial, all it need try in the counterclaim trial are the different issues of relevant market, predatory intent, market dominance, and (perhaps) guilty knowledge.