ECRIX CORPORATION, Plaintiff
and Counter–Defendant,

v.

EXABYTE CORPORATION, Defendant
and Counter–Claimant.

No. Civ.A. 99–K–1151.

United States District Court,
D. Colorado.

March 10, 2000.

Daniel S. Hoffman, Barbara Z. Blumenthal, Hoffman Reilly Pozner & Williamson LLP, Denver, CO, David J. Lee, Daniel N. Fishman, Lee & Fishman, LLP, Boulder, CO, for plaintiff.

Nancy J. Geggenheimer, George G. Matava, Brian A. Carpenter, Holme, Roberts & Owen LLP, Denver, CO, for defendants.

## MEMORANDUM OPINION AND ORDER ON PENDING MOTIONS

KANE, Senior District Judge.

Ecrix Corporation's ("Ecrix") original complaint requested me to issue a declaratory judgment that it was not infringing any of Exabyte Corporation's ("Exabyte") patents. Ecrix manufactures helical-scan drives for recording computer data.[1] Exabyte has at least seven patents on methods of recording and reading helically-recorded data. Ecrix filed an amended complaint that in addition to requesting a declaratory judgment of non-infringement also charged Exabyte with antitrust violations, patent misuse, declaration of valid license in the event of possible infringement, estoppel,. unfair competition and tortious interference. (Am.Compl. at 1.) Pending are Exabyte's Motion to Dismiss for Lack of "Case or Controversy," Exabyte's Motion to Bifurcate and Stay, Ecrix's Motion to Compel Full Disclosure, and Exabyte's Motion for a Protective Order.

### I. Allegations and Claims in Amended Complaint

On January 13, 1999, Exabyte sent a letter to Ecrix calling Ecrix's attention to seven patents owned by Exabyte. (Id. at 2.) Exabyte included in the letter a copy of its standard patent licensing agreement and royalty rates for use of the patents. (Id. at 3) Ecrix contacted Exabyte around January 21, 1999 stating it did not believe it was infringing Exabyte's patents. (Id.) Ecrix was informed that Exabyte had not brought infringement claims against any other manufacturers of helical-scan tape drives and had no evidence Ecrix was infringing its patents. (Id.) In a telephone conversation on March 2, 1999 Ecrix informed Exabyte it had studied Exabyte's patents and did not believe it was infringing them. (Id. at 4.)

On June 17, 1999, Ecrix received a letter from Exabyte's counsel withdrawing the offer of a licensing agreement and restating Exabyte's belief that Ecrix was infringing its patents. (Id.) On June 18, 1999, Ecrix filed a complaint in this court seeking a declaratory judgment that it was not infringing Exabyte's patents. (Compl. at 1.) In a phone conversation on or about June 24, 1999, Exabyte admitted it did not know if Ecrix was actually infringing its patents. (Id. at 5.) Therefore, Exabyte proposed that Ecrix disclose its technology so that Exabyte could determine if there was any infringement. (Id.)

On July 2, 1999, an Ecrix representative met with an Exabyte engineer to discuss the alleged patent infringement. (Id. at 6.) The parties dispute the engineer's ability to evaluate patent infringement. (Id.) After the meeting Ecrix contacted Exabyte requesting information about the engineer's evaluation and also voicing concerns regarding the Engineer's ability to evaluate the patents. (Id. at 8.) On or about August 4, 1999, Exabyte complained about Ecrix's unwillingness to deal with its qualified engineer and proposed that Ecrix pay $3 million in cash and give Exabyte full rights to practice Ecrix's helical-scan technology. (Id.) Ecrix rejected Exabyte's offer and requested evidence of infringement. (Id. at 9.)

According to Ecrix, Exabyte ignored its requests for further negotiations but did request a sample helical tape drive. (Id.) On October 7, 1999, the parties met and Exabyte informed Ecrix it was infringing several of the seven patents about which it had informed Ecrix, as well as four additional patents. (Id. at 10.) Exabyte claimed it had lost profits because of Ecrix's infringement. (Id.) Exabyte made a new offer of a licensing agreement that now required Ecrix to pay $5 million and give Exabyte all rights to practice Ecrix's helical-scan technology. In response to the offer Ecrix amended its June 18, 1999 claim to include charges that Exabyte's conduct violated antitrust and unfair competition laws.

### II. Exabyte's Motion to Dismiss for Lack of Case or Controversy

Exabyte's motion seeks dismissal of Ecrix's Ninth through Fourteenth Causes of

---

1. "Helical-scan" refers to a method of recording and writing data used by storage devices in which the heads are mounted on a rotating drum. "Helically-recorded data" refers to data recorded by this method.

Action. In response Ecrix has consented to the dismissal of these claims without prejudice stating it may seek to amend its pleadings following discovery. Accordingly, the Ninth through Fourteenth Causes of Action are dismissed without prejudice.

### III. *Exabyte's Motion to Separate Issues for Trial and for Limited Stay of Discovery*

#### A. *Legal Standard*

▪ Federal Rule of Civil Procedure 42(b) gives a court discretion to bifurcate a trial if the court finds that bifurcation will: (a) be more convenient; (b) avoid prejudice; or (c) be conducive to expedition and economy. FED.R.CIV.P. 42(b). The trial court has discretion to decide whether to bifurcate a trial. *See Easton v. City of Boulder*, 776 F.2d 1441, 1447 (10th Cir.1985). In deciding whether to bifurcate a trial a court should consider the following factors: (1) judicial economy; (2) convenience to the parties; (3) expedition; and (4) avoidance of prejudice and confusion. *See In re Innotron Diagnostics*, 800 F.2d 1077, 1085 (Fed.Cir.1986).

#### B. *Merits*

Exabyte has filed a motion requesting me first to conduct a trial to see if Ecrix infringed Exabyte's patents and then to hold a separate trial on Ecrix's antitrust and state law unfair competition claims. Exabyte argues it would be more convenient to the parties if the trial were bifurcated as discovery would be limited initially to patent infringement matters. (Exabyte's Mot. Bifurcation at 9.) Exabyte contends the smaller amount of discovery necessary for trying the patent infringement case could be obtained quickly allowing for an early trial of this issue. (*Id.* at 10.) Also, Exabyte believes there would be less likelihood of jury confusion if the issues were separated. Exabyte claims it would be prejudiced if a jury heard evidence that it was a "monopolizer" at the same time Exabyte was trying to prove to the jury that Ecrix violated its patents. (*Id.*)

In response, Ecrix argues it will be subject to undue delay if the trial is bifurcated. (Ecrix's Resp. at 8.) Ecrix argues the issues of patent misuse and antitrust are neither complex nor complicated and do not justify bifurcation. (*Id.* at 8.) Ecrix also argues bifurcation will lead to disputes about the scope of discovery for the first trial and these disputes will increase the costs of litigation. (*Id.* at 9.)

While both parties can support their arguments for and against bifurcation with general case law, a case involving both patent infringement and antitrust claims presents a special situation. The Federal Circuit has noted in *dicta* that district courts routinely separate patent and antitrust issues. *See Innotron*, 800 F.2d at 1084. Bifurcation is often used in a patent/antitrust case because a finding of patent infringement in the first trial can prove the claims of patent infringement made by the patent owner were not objectively baseless. *See FilmTec Corp. v. Hydranautics*, 67 F.3d 931, 936 (Fed.Cir. 1995). If the claims of patent infringement made by the patent owner were not objectively baseless then antitrust counterclaims may be negated. *See id.* Similarly, a patent owner is allowed to enforce his patent rights by publication if he does not act in bad faith. *Zenith Elec. Corp. v. Exec, Inc.*, 182 F.3d 1340, 1355 (Fed.Cir.1999). Therefore, a finding of patent infringement counters unfair competition claims that the patent holder unfairly interfered with the infringing party's customers. *Id.*

A finding of patent infringement in the first trial would tend to show Exabyte did not violate antitrust law in its dealings with Ecrix and also did not act in bad faith in publishing its patent rights countering Ecrix's state unfair competition claims. Therefore, if the court were to find patent infringement in the first trial, it might then award summary judgment to Exabyte on Ecrix's antitrust claims and any unfair competition claims Ecrix may bring after discovery.

In the event that patent infringement is not found in the first trial, this issue is removed from consideration in the second trial and the court can then focus on the antitrust and unfair competition claims. *See Innotron*, 800 F.2d at 1085. Bifurcation in cases involving patent infringement, antitrust and unfair competition claims generally furthers judicial economy as antitrust and unfair

competition claims need not be heard by a court if patent infringement is proved. If patent infringement is not proved, a focused trial on antitrust and unfair competition can then be held.

Ecrix attempts to counter this argument by stating that unlike patent/antitrust cases that were bifurcated, its antitrust claims are not very complicated. (Ecrix's Resp. at 4–5.) Ecrix also notes where patent infringement and antitrust issues are interwoven, bifurcation has been denied by some courts. (*Id.* at 6.) Generally, however, overlap between patent infringement and antitrust claims is found where there is a claim that the patent was fraudulently procured. *See, e.g., In re Theodor Groz & Sohne,* 1992 WL 188908 at *1–2 (Fed.Cir.1992) (upholding trial court's denial of bifurcation as patent infringement and antitrust issues were so interwoven where the antitrust counterclaims included a claim that the patent was fraudulently procured). In this case Ecrix has not claimed Exabyte fraudulently procured the patents at issue and so the patent infringement and antitrust claims are not interwoven to the same degree.

### C. Conclusion

■ The majority of courts, when faced with a case involving claims of patent infringement by the patent holder and counterclaims of antitrust and unfair competition by the alleged patent infringer, bifurcate the case to hear the issues separately. Antitrust and unfair competition counterclaims are often brought against a patent holder who is trying to enforce his patent. Separating these issues prevents antitrust and unfair competition claims from becoming a counterclaim intended to cause expensive litigation and to dissuade a patent owner from trying to enforce its patent rights.

Bifurcation allows for (1) quicker resolution of the patent infringement issue as there is less discovery required, and (2) judicial economy as the antitrust and unfair competition claims may not have to be heard if patent infringement is proved in the first trial. The only time when these interests may be outweighed and a single trial ordered is when the claims overlap, generally when

the antitrust claim is based on an accusation that the patent was initially fraudulently procured by the patent holder. In the instant case, there is no significant overlap between the claim of patent infringement and the antitrust unfair competition claims. Therefore bifurcation is appropriate in the interest of economy and to expedite the trial.

Discovery of information related to the antitrust claims will not be stayed. I do not want to be the mediator in disputes over what information relates to antitrust violations and what information relates to patent infringement. There will be overlap in the patent infringement/antitrust evidence so discovery on both issues will be allowed to proceed. Even without a stay of discovery the judicial process is expedited as the patent trial can be set for a time when discovery related only to the patent infringement issues will be complete. Denying the stay on discovery will also allow for a quick resolution of the antitrust trial, if it is required, as both parties will already have most of the information required. Bifurcating the trial but denying the stay on discovery should serve the interests of both parties in an expedited resolution of all the claims.

### IV. Exabyte's Motion to Strike Allegations of Settlement Discussions between the Parties

#### A. Legal Standard

■ Federal Rule of Civil Procedure 12(f) allows a court to strike any, "redundant, immaterial, impertinent, or scandalous matter." FED.R.CIV.P. 12(f). Under Federal Rule of Evidence 408, evidence of an offer to compromise is not admissible to prove a claim or its amount. FED.R.EVID. (408). The courts in this district require a showing of prejudice before striking an allegation. *Duran v. Clover Club Foods Co.,* 616 F.Supp. 790, 793 (D.Colo.1985) (Kane, J.).

#### B. Merits

Exabyte moves to strike paragraphs 12 through 27 of the amended complaint claiming they set forth terms of settlement negotiations that are not admissible evidence and should be stricken as immaterial. Exabyte contends a party need not show prejudice in

order to have an allegation stricken as this requirement is not in the text of Rule 12(f). (Exabyte's Mot. at 2.) Exabyte also argues even if prejudice is required it will be prejudiced if evidence of the settlement negotiations is not struck as (1) Ecrix uses the settlement negotiations to limit its damages to a royalty as opposed to lost profits; and (2) this court may be prejudiced by the parties' respective positions concerning settlement. (*Id.* at 2–3).

In response, Ecrix argues it is averring to negotiations to prove the claim of patent infringement. (Resp. at 3.) Instead, Ecrix claims the settlement negotiations show Exabyte was using its patent to violate state and federal antitrust laws. (*Id.* at 3.) Ecrix argues (1) settlement negotiations are admissible to show liability for a claim not at issue in the negotiations, (*id.* at 2), and (2) wrongs committed during settlement negotiations are also admissible, (*id.* at 5). Ecrix does not, however, directly address the fact that it is using the negotiations to claim, if it is infringing Exabyte's patent, the amount of damages should be limited to a reasonable royalty as Exabyte did offer it a license to practice the patents. (Am.Compl. ¶¶ 51–3, 60–5.)

While Ecrix does not directly address the use of "negotiation" evidence, Exabyte relies upon *Deere & Co. v. International Harvester Co.*, 710 F.2d 1551, 1556 (Fed.Cir.1983) for its proposition that all evidence of negotiations between the parties should be stricken. (Mot. at 3.) However, *Deere* clearly states, "Rule 408, on its face, is limited to actual disputes over existing claims and, accordingly, cannot be applicable to an offer, albeit one ultimately rejected, to license an, as yet, uncontested patent." 710 F.2d at 1557. The *Deere* court said evidence of negotiations entered into before a patent infringement claim was filed was admissible but evidence of negotiations after the claim was filed was inadmissible. *See id.* Exabyte, therefore, does not address the admissibility of negotiations made before the filing of Ecrix's original complaint. The only support it has for striking this evidence is a case where a district court's decision to exclude evidence of prelitigation negotiations was upheld as the appellate court did not find "manifest error, such as a reasonable likelihood that the improper exclusion of evidence prejudiced the outcome." *National Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1197 (Fed.Cir.1996). Prelitigation discussions may be viewed as 'business communications' and not offers of settlement. *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1372–73 (10th Cir.1977).

### C. Conclusion.

Ecrix is using the evidence of its negotiations with Exabyte to put a value on the damages Exabyte can receive if patent infringement is found. This is an improper use of evidence from settlement negotiations and should be stricken from Ecrix's Amended Complaint that relates to patent infringement and patent infringement damages. Evidence of negotiations between Ecrix and Exabyte made before Ecrix's initial complaint, filed on June 18, 1999, however, may be used by Ecrix in connection with its patent claims as these negotiations were not settlement negotiations and no claim had been filed with the court by either party at this time. Also, if the trial is bifurcated the evidence of the settlement negotiation made after June 18, 1999 may be used in the antitrust/unfair competition trial. Such evidence can be used in the antitrust/unfair competition trial as the claims at issue in the trial are not the same as that being negotiated in the settlement discussions.

### V. *Ecrix's Motion to Compel Full Disclosure under Rule 26*

#### A. Legal Standard

A party may move for a protective order preventing discovery of certain matters to protect it from undue burden or expense. FED.R.CIV.P. 26(c). When a motion for a protective order has been filed, the local court rules provide:

> Pending resolution of any motion under Fed.R.Civ.P. 26(c) or 30(d), no party, attorney, or witness is required to appear until the motion is resolved. The filing of a motion under either of these rules shall

stay further discovery to which the motion is directed until further order of the court. D.C.Colo.L.R. 30.1B (1999).

### B. Merits

Ecrix seeks full disclosure from Exabyte of all information it requests concerning antitrust abuse by Exabyte in its dealings with Ecrix. Ecrix also requests attorney fees for filing the motion as it claims Exabyte has no basis in fact or law for denying Ecrix's discovery requests.

In support of its motion, Ecrix relies on several out of state cases that have held filing for a protective order does not stay discovery. See, e.g., In re Lotus Dev. Corp. Sec. Litig., 875 F.Supp. 48, 49–50 (D.Mass. 1995) (stating there is no automatic stay of discovery once a motion for a protective order has been filed) (Mot. to Compel at 2–3.) Exabyte, in its response, notes that District of Colorado Local Rule 30.1B provides a Motion for a Protective Order does stay discovery. (Resp.Mot. to Compel at 3.) Exabyte claims its Motion for Bifurcation and Stay was a form of a Motion for Protective Order resulting in a stay of discovery until it is decided. (Id.) In the alternative Exabyte has now filed a Motion for Protective Order under Fed.R.Civ.P. 26(c).[2] (Id.) In response to Exabyte's claim that the Motion for Bifurcation and Stay of Discovery provided an automatic stay of discovery until resolved by this Court, Ecrix notes in Exabyte's interrogatory No. 3 it asks for identification of acts or omissions to support patent misuse claims. (Ecrix's Reply Mot. to Compel Full Disclosure at 3.)

### C. Conclusion

■ The Motion to Compel Full Disclosure is granted. Exabyte did not seek a Protective Order to prevent discovery about antitrust violations under Federal Rule of Civil Procedure 26(c). Therefore, under the local rules, it could not deny Ecrix's discovery requests. Exabyte attempted to cure this problem by filing a Motion for Protective Order to prevent discovery of information related to antitrust issues until a decision on

its motion to bifurcate had been reached. This Motion for Protective Order is denied, therefore, the Motion for Full Disclosure is granted.

An award of attorneys fees against Exabyte for failure to respond to Ecrix's discovery requests is denied as it does not appear that Exabyte acted in bad faith. Exabyte believed its motion to stay discovery was covered by the local court rule so that discovery was stayed until the motion was decided.

### VI. Motion to Compel Response to Exabyte's Interrogatory No. 2

### A. Legal Standards

If a party fails to answer an interrogatory, the discovering party may file a motion compelling an answer. Fed.R.Civ.P. 37(a)(2)(B). When an interrogatory requests an explanation of the effect of prior art on patent validity, the response should set forth the prior art and briefly state why it supports the contention that the patent is invalid. See Motorola, Inc. v. Alexander Mfg. Co., 22 U.S.P.Q.2d (BNA) 1718, 1719, 1991 WL 325499 (N.D.Iowa 1991).

### B. Merits

■ Exabyte has requested in Interrogatory Number 2 that Ecrix supply it with all prior art on which Ecrix bases its contention that the Exabyte patents are invalid. (Interrogatory No. 2.) While Ecrix at first refused this request it has now responded by listing the prior art. (Am.Resp. Interrogatory No. 2.) Exabyte did not ask for an explanation of why the prior art invalidates its patents. Accordingly, this case is distinguishable from Motorola and the provision of a list of documents without any explanation is an effective response to Interrogatory No. 2. See Motorola, 22 U.S.P.Q.2d (BNA) at 1718–19. Should it choose to do so, Exabyte may file a supplemental interrogatory that requires an explanation of why the prior art invalidates its patents.

### C. Conclusion

As Ecrix has provided Exabyte with a list of the documents it requested in Interrogato-

---

2. On February 25, 2000, Exabyte formally filed a motion requesting a Protective Order to stay

discovery as to Ecrix's antitrust and related claims. I deny that motion.

ry No. 2, the motion to compel is denied as moot.

### VII. *Exabyte's Motion for Protective Order*

#### A. *Legal Standard*

A party may move for a protective order preventing discovery of certain matters to protect it from undue burden or expense. FED.R.CIV.P. 26(c).

#### B. *Merits*

Exabyte filed a Motion for Protective Order to prevent it having to respond to Ecrix's requests for information relating to its antitrust claims. Exabyte believes that its Motion for a Limited Stay was in effect a motion for protective order. (Mot. for Prot. Order at 2) Alternatively, Exabyte argues a protective order should now be issued to prevent Ecrix discovering any information about its antitrust claims until Exabyte's Motion for Bifurcation and Stay is decided. (*Id.*)

#### C. *Conclusion.*

 As discussed above, only a motion for a protective order brought under Federal Rule of Civil Procedure 26(c) stays discovery until the motion is decided. FED.R.CIV.P. 26(c). Exabyte's original motion to bifurcate and stay was not made under this rule and did not stay discovery until the motion was decided. Allowing a party a protective order until motions before the court are decided creates a precedent for discovery abuse. Parties can simply file motions and then seek protective orders, delaying discovery. In order for Exabyte to obtain a protective order it needs to show "annoyance, embarrassment, oppression, or undue burden or expense...." FED.R.CIV.P. 26(c). Exabyte has not specifically claimed any of these factors in its motion nor is there any evidence to support such a claim, therefore, its motion is denied.

### VIII. *Summary*

For the aforesaid reasons, IT IS ORDERED THAT:

Ecrix's Ninth through Fourteenth Causes of Action are DISMISSED WITHOUT PREJUDICE, with each party to bear its own fees and costs;

Exabyte's Motion to Separate Issues for Trial is GRANTED;

Exabyte's Motion for Limited Stay of Discovery is DENIED;

Exabyte's Motion to Strike Allegations of Settlement Discussions between the Parties is GRANTED IN PART and allegations of negotiations conducted after June 18, 1999 are stricken from all patent infringement claims and said motion is DENIED insofar as it seeks any other relief;

Ecrix's Motion to Compel Full Disclosure under Rule 26 is GRANTED;

Motion to Compel Response to Exabyte's Interrogatory No. 2 is DENIED AS MOOT;

Exabyte's Motion for Protective Order is DENIED.