# United States Court of Appeals for the Federal Circuit

05-1445

FUJI PHOTO FILM CO., LTD.,

Plaintiff-Appellee,

v.

JACK C. BENUN,

Defendant,

and

RIBI TECH PRODUCTS LLC,

Defendant-Appellant,

and

POLYTECH ENTERPRISES LTD.
and POLYTECH (SHENZHEN) CAMERA CO. LTD.,

Defendants.

Lawrence Rosenthal, Stroock & Stroock & Lavan LLP, of New York, New York, argued for plaintiff-appellee. With him on the brief were Matthew W. Siegal and Angie M. Hankins. Of counsel was Robert J. Rohrberger, Fox and Fox L.L.P., of Livingston, New Jersey.

John M. Peterson, Neville Peterson LLP, of New York, New York, argued for defendant-appellant. With him on the brief were Maria E. Celis; and George W. Thompson, of Washington, DC. Of counsel on the brief was Jerry P. Wiskin, Simons & Wiskin, of South Amboy, New Jersey. Of counsel were Catherine Chess Chen, Neville Peterson LLP, of Washington, DC; and Curtis W. Knauss, of New York, New York.

Appealed from: United States District Court for the District of New Jersey

Judge Katharine S. Hayden

# United States Court of Appeals for the Federal Circuit

05-1445

FUJI PHOTO FILM CO., LTD.,

Plaintiff-Appellee,

v.

JACK C. BENUN,

Defendant,

and

RIBI TECH PRODUCTS LLC,

Defendant-Appellant,

and

POLYTECH ENTERPRISES LTD.
and POLYTECH (SHENZHEN) CAMERA CO. LTD.,

Defendants.

_____

DECIDED:  August 23, 2006

_____

Before RADER, Circuit Judge, CLEVENGER, Senior Circuit Judge, and DYK, Circuit Judge.

RADER, Circuit Judge.

The United States District Court for the District of New Jersey preliminarily enjoined Ribi Tech Products LLC (Ribi Tech) and other defendants from, inter alia, importing certain lens fitted film packages (LFFPs). Fuji Photo Film Co. v. Benun, No. 2:05-CV-1863-KSH-PS (D.N.J. June 16, 2005) (Preliminary Injunction Order).  Ribi

Tech challenges that preliminary injunction on the sole ground that the district court lacked jurisdiction to enjoin the importation of any LFFPs that are subject to a general exclusion order issued by the International Trade Commission (ITC or Commission) in 1999. In re Certain Lens-Fitted Film Packages, Inv. No. 337-TA-406 (Int'l Trade Comm'n June 28, 1999) (Exclusion Order); see also Jazz Photo Corp. v. Int'l Trade Comm'n, 264 F.3d 1094, 1110-11 (Fed. Cir. 2001) (affirming the Exclusion Order for those LFFPs that were not previously sold in the United States or that were manufactured by procedures exceeding permissible repair) (Jazz I). Because the district court properly asserted jurisdiction under 38 U.S.C. § 1338(a), and because no other statute operates to divest the district court of that jurisdiction, this court affirms.

I.

The history of litigation involving the LFFPs, sometimes called "disposable" or "single use" cameras, is well-documented. In addition to Jazz I, other decisions of this court, the district court, the Commission, and the United States Court of International Trade have described that litigation in detail. See, e.g., Jazz Photo Corp. v. United States, 439 F.3d 1344, 1346-47 (Fed. Cir. 2006) (Jazz IV) (outlining the history of the litigation surrounding the LFFPs). The various opinions identified in Jazz IV fit along two parallel lines of litigation. The first group of cases began at the Commission in 1998 when Fuji Photo Film Co. (Fuji) sought to bar the import of LFFPs that, according to Fuji, infringed one or more of its patents. The other group of cases began at the district court in 1999 when Fuji sued Jazz Photo Corp. (Jazz) for infringement of those same patents. See id. As a result of proceedings before the Commission, Jazz had many of its LFFPs seized under the Exclusion Order and was also forced to pay a $13,675,000

civil penalty for violating the <u>Exclusion Order</u>. <u>Id.</u> at 1347. The related district court proceedings found Jazz liable for willful infringement and awarded Fuji damages exceeding $29,000,000. <u>Id.</u> Both lines of litigation continue to evolve, largely due to ongoing disputes about whether various LFFPs fit within the permissible repair category identified in <u>Jazz I</u>.

In 2003, Jazz sought bankruptcy protection, and ultimately was liquidated in early 2005. As a part of that liquidation, Jazz sold its interest in about 1.4 million LFFPs, many of which had already been seized under the Exclusion Order, to Ribi Tech. <u>Id.</u> at 1348. Like Jazz, Ribi Tech is managed by Jack C. Benun and owned by his family. In April 2005, Fuji sued Ribi Tech, Benun, Polytech Enterprises Ltd., and Polytech (Shenzhen) Camera Co. Ltd (collectively, Defendants), alleging infringement of the same Fuji LFFP patents earlier asserted against Jazz. In their answer to Fuji's complaint, defendants argued that they intended to import only LFFPs "of a kind" that would not infringe Fuji's patents. In response, Fuji requested the court to allow it to sample some of the 1.4 million LFFPs to verify Ribi Tech's defense. Persuaded by Fuji's arguments, the district court granted Fuji's motions for an emergency order and for a preliminary injunction. Thus, the district court prohibited Ribi Tech and Benun "from transferring, removing or otherwise disposing of any LFFPs from the Jazz inventory." <u>Fuji Photo Film Co. v. Benun</u>, No. 2:05-CV-1863-KSH-PS, slip op. at 4 (D.N.J. June 9, 2005) (granting Fuji's motion for an emergency order). Further, the trial court enjoined Benun and Ribi Tech from "importing, manufacturing, selling, offering for sale or otherwise transferring in any manner" LFFPs that did not originate from shells of LFFPs first sold in the United States, or which were made according to a specific

identified process. Preliminary Injunction Order at 5. Ribi Tech appeals the district court's grant of the preliminary injunction. Ribi Tech challenges only the jurisdiction of the district court to enjoin any importation that is already the subject of the Exclusion Order.

II.

This court reviews the district court's jurisdiction without deference. Vanguard Research, Inc. v. PEAT, Inc., 304 F.3d 1249, 1254 (Fed. Cir. 2002). Further, 28 U.S.C. § 1338(a) (2000) provides, in part: "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . ." Additionally, 35 U.S.C. § 283 (2000), provides: "The several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." Thus, these statutes, working together, supply the district court with jurisdiction and authority to issue the challenged injunction in this case.

Ribi Tech does not contest that a patentee can bring actions before both the federal district court and the Commission challenging an alleged infringer's imports. See Tex. Instruments, Inc. v. Tessera, Inc., 231 F.3d 1325, 1330 (Fed. Cir. 2000) ("For alleged infringement through importation, a patentee can . . . file an action in a district court or in the ITC. See 19 U.S.C. § 1337 (2000). In fact, a patentee can bring suit both in a district court and in the ITC against an alleged infringer who is importing an allegedly infringing product." Nor does Ribi Tech question the authority of a federal district court to prohibit importation of infringing goods after the Commission has refused to issue a section 1337 general exclusion order. See Tex. Instruments, Inc. v. Cypress

Semiconductor Corp., 90 F.3d 1558, 1569 (Fed. Cir. 1996) (explaining that decisions of the Commission involving patent issues have no preclusive effect in other forums—including district courts). Apart from those two situations, Ribi Tech urges this court to acknowledge a distinction for situations where the Commission has issued a general exclusion order. According to Ribi Tech, once the Commission issues a general exclusion order, the statutory scheme that allows an importer to challenge a seizure of its goods under such an order also prevents a district court from considering importation issues involving those same goods.

By filing a protest, an importer may challenge Customs' seizure of goods under a general exclusion order. See 19 U.S.C. §§ 1514 (2000) (Protests against decisions of Customs Service), 1515 (2000) (Review of protests). If Customs denies that protest, the importer may challenge that denial, or partial denial, only in the Court of International Trade. See 28 U.S.C. § 1581(a) (2000). Thus, section 1581(a) states:

> The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930 [19 U.S.C. § 1515].

Id. Read alone or in context with the related provisions of Title 19, section 1581(a) means exactly what it says: the Court of International Trade possesses exclusive jurisdiction over denials of protests arising under 19 U.S.C. § 1515. The language of section 1581(a) says nothing about district court jurisdiction over patent infringement claims under 35 U.S.C. § 271 or injunctions under 35 U.S.C. § 283. Nothing in these relevant statutes even vaguely suggests that the statutory scheme for protesting a seizure, including the exclusive jurisdiction of the Court of International Trade to review unsuccessful protests, divests a district court of jurisdiction to consider an injunction on

goods subject to a general exclusion order. Section 1581(a) says that a district court does not have jurisdiction to consider a seizure protest, but that statute does not even mention, let alone limit, a district court's jurisdiction to enjoin importation under 35 U.S.C. § 283. Protested actions of the Customs Service are different jurisdictional subject matter than remedies for patent infringement.

The parties and remedies associated with a general exclusion order differ markedly from a civil action seeking a preliminary injunction to remedy patent infringement. A general exclusion order merely excludes goods from entry. In some cases the Commission can order seizure of the goods, for example if an importer twice attempts to import the same goods. 19 U.S.C. § 1337(i) (2000); 19 C.F.R. § 12.39(c) (2006). Where the importer ultimately challenges such a seizure in the Court of International Trade, the action is against the United States. See 28 U.S.C. § 1581 (2000) (Civil actions against the United States and agencies and officers thereof). The Government is, of course, not involved in a normal patent infringement action like the one before the district court in this case. Moreover, a finding of infringement by a district court can give rise to damages and attorney fees remedies. Finally, the violation of a preliminary injunction may trigger a contempt proceeding against the infringing importer with a potential of both civil and criminal sanctions.

Contrary to Ribi Tech's arguments, Orleans International, Inc. v. United States, 334 F.3d 1375 (Fed. Cir. 2003) does not compel a different result in this case. Orleans resolved a jurisdictional question in the context of a constitutional challenge to import assessments mandated by the Beef Promotion and Research Act of 1985 (the Beef Act), 7 U.S.C. §§ 2901-2911. This court concluded that the Court of International Trade

Commission erred in dismissing the case for lack of 28 U.S.C. § 1581(i) exclusive subject matter jurisdiction. Orleans, 334 F.3d at 1380. This court explained: "The correct approach . . . is to focus on whether the 'civil action' at issue falls within the language of 28 U.S.C. § 1581(i). If the action does fall within that language, the Court of International Trade has exclusive jurisdiction. That is the jurisdictional scheme established by Congress." Id. at 1378. In Orleans, this court concluded that the Beef assessments did fall within section 1581(i), meaning that the Court of International Trade had exclusive jurisdiction over that action. Id. at 1378-79.

Returning to this case, 28 U.S.C. § 1581(a) only provides the Court of International Trade exclusive jurisdiction for actions "commenced to contest the denial of a protest." Fuji's complaint in the district court is not such an action. Moreover, while Ribi Tech has expressed frustration at the possibility that it will have to confront similar issues in both the Court of International Trade and the district court, Orleans makes clear that such duplication of litigation efforts is simply not relevant to the jurisdictional inquiry. Id. at 1379 ("The district courts and the [Court of International Trade] can both have jurisdiction over actions arising out of the same act—it simply does not matter that there will be similar legal issues litigated in different courts.").

Finally, 28 U.S.C. § 1659 (2000), entitled "Stay of certain actions pending disposition of related proceedings before the United States International Trade Commission," supports the district court's proper exercise of jurisdiction in this case. That section states:

> **(a) Stay**.—In a civil action involving parties that are also parties to a proceeding before the United States International Trade Commission under section 337 of the Tariff Act of 1930, at the request of a party to the civil action

that is also a respondent in the proceeding before the Commission, the district court shall stay, until the determination of the Commission becomes final, proceedings in the civil action with respect to any claim that involves the same issues involved in the proceedings before the Commission, but only if such request is made within [a specified time].

By requiring the district court to stay the proceedings "until the determination of the Commission becomes final," section 1659 necessarily suggests that after a final determination by the Commission, the district court may resume its consideration of the civil action. Thus, section 1659 places limits on the timing of parallel actions involving the Commission and a district court. Specifically, the district court must await a final decision from the Commission before proceeding with its action. Section 1659 does not state, or even suggest, that the results of the Commission's final decision might alter the jurisdiction of the district court. Thus, a final decision to issue a general exclusion order does not alter the district court's authority to proceed with remedies that may affect the same goods.

## CONCLUSION

Because the district court possessed jurisdiction under 28 U.S.C. § 1338(a), and because Ribi Tech has raised only a jurisdictional challenge, this court affirms the district court's decision.

## COSTS

Each party shall bear its own costs.

## AFFIRMED