# United States Court of Appeals for the Federal Circuit

MISCELLANEOUS DOCKET NO. 841

IN RE PRINCO CORPORATION
and PRINCO AMERICA CORPORATION,

Petitioners.

Eric L. Wesenberg, Orrick, Herrington & Sutcliffe LLP, of Menlo Park, California, argued for petitioners. With him on the petition were Robert E. Freitas and Cynthia A. Wickstrom. Of counsel was Jason S. Angell.

Garrard R. Beeney, Sullivan & Cromwell LLP, of New York, New York, argued for respondent, U.S. Philips Corporation. With him on the response were Maite Aquino, James T. Williams, and Adam R. Brebner; Margaret K. Pfeiffer and Bruce W. Hickey, of Washington, DC.

On Petition for Writ of Mandamus to the United States District Court for the Southern District of New York

Judge Charles L. Brieant, Jr.

# United States Court of Appeals for the Federal Circuit

MISCELLANEOUS DOCKET NO. 841

IN RE PRINCO CORPORATION
and PRINCO AMERICA CORPORATION,

Petitioners.

ON PETITION FOR WRIT OF MANDAMUS

Before BRYSON, LINN, and DYK, Circuit Judges.

DYK, Circuit Judge.

ORDER

This case involves a suit for patent infringement by U.S. Philips Corporation ("Philips") against Princo Corporation and Princo America Corporation ("Princo"). Princo seeks a writ of mandamus directing the United States District Court for the Southern District of New York to (1) stay the case pursuant to 28 U.S.C. § 1659 (2000) and (2) vacate its order granting Philips's motion for summary judgment on Princo's patent misuse defense. We conclude that the district court erred under § 1659 when it did not stay the case until related proceedings before the Commission, including any appeals, become final. We accordingly grant Princo's petition for a writ of mandamus.

BACKGROUND

This is the third time this case or the related Commission proceeding has been before this court. See U.S. Philips Corp. v. Int'l Trade Comm'n, 424 F.3d 1179 (Fed. Cir. 2005) ("Philips I"); U.S. Philips Corp. v. Princo Corp., 173 Fed. Appx 832 (Fed. Cir. 2006) ("Philips II"). Six of Philips's patents are alleged to have been infringed: U.S.

Patent Nos. 4,809,209 (Kramer); 4,962,493 (Kramer); 4,972,401 (Carasso); 4,999,825 (Raaymakers); 5,023,856 (Raaymakers); and 5,418,764 (Roth).

These six allegedly infringed patents cover technology for manufacturing recordable compact disks ("CD-Rs") and rewritable compact disks ("CD-RWs"). Philips licenses those six patents through package licensing together with other patents, meaning that licensees must pay a royalty based on the number of discs manufactured regardless of how many of the patents are actually used in the manufacturing. Manufacturers cannot license the patents individually from Philips or pay a lower royalty for a license to fewer than all of the patents. Princo's theory is that Philips unlawfully tied licenses to the six patents (that are essential to the manufacture of CD-Rs and CD-RWs) to licenses to other patents (that are not essential to the manufacture of such items).

In 1997 Princo entered into a licensing agreement with Philips, but stopped paying the licensing fees shortly thereafter. Philips terminated the agreement and, on January 10, 2002, filed an infringement complaint against Princo in the Southern District of New York asserting that Princo infringed all six patents.

On July 22, 2002, the Commission initiated an investigation into the importation of CD-Rs and CD-RWs pursuant to 19 U.S.C. § 1337 (2000). At issue were the same six patents that were before the district court. On August 14, 2002, Princo intervened in the Commission proceedings as a respondent.

In the district court proceeding, Princo moved for a stay pursuant to § 1659. Section 1659 provides that

> [i]n a civil action involving parties that are also parties to a proceeding before the United States International Trade Commission under section

337 of the Tariff Act of 1930, at the request of a party to the civil action that is also a respondent in the proceeding before the Commission, the district court shall stay, until the determination of the Commission becomes final, proceedings in the civil action with respect to any claim that involves the same issues involved in the proceeding before the Commission.

The party requesting the stay must do so either within "30 days after the party is named as a respondent in the proceeding before the Commission" or "30 days after the district court action is filed." § 1659. Princo moved for a stay on September 10, 2002, within 30 days of when it intervened in the Commission proceedings. Philips did not oppose the motion, and the district court issued the stay.

On March 11, 2004, the Commission held that Philips engaged in patent misuse. The Commission found that (1) the six patents were "essential" to the manufacture of CD-Rs or CD-RWs, and (2) four patents were "not essential" to that activity.[1] Philips I, 424 F.3d at 1183. The Commission then ruled that "the four nonessential patents were impermissibly tied to [the] patents that were essential to manufacturing CR-Rs and CD-RWs, because none of the so-called essential patents could be licensed individually for the manufacture of CD-RWs and CD-Rs apart from the package that Philips denominated as essential." Id. (internal quotation marks omitted). Philips appealed the Commission's decision to this court on May 10, 2004. The Commission did not address whether Philips unlawfully tied a fifth allegedly nonessential patent, U.S. Patent No. 4,942,565 (Lagadec), and the Lagadec patent was not at issue in Philips's appeal to this court.

---

[1] The four nonessential patents were U.S. Patent Nos. 5,001,692 (Farla), 5,740,149 (Iwasaki), Re. 34,719 (Yamamoto), and 5,060,219 (Lokhoff).

Misc. 841                                3

After the Commission's ruling but before Philips appealed, on March 16, 2004, the district court lifted the § 1659 stay. On April 16, 2004, Princo requested that the stay be continued pending appeal of the Commission proceedings. The district court apparently did not rule on that motion, thus effectively denying it. On January 24, 2005, the district court granted Philips's motion for summary judgment, ruling that Princo had infringed Philips's patents and, on February 2, 2005, granted another Philips motion for summary judgment, rejecting Princo's patent misuse defense. Princo appealed to this court on the patent misuse issue. Princo did not argue on appeal from the district court determination that the district court erred in failing to grant a stay pending appeal of the Commission proceedings or that this court should stay the appeal from the district court determination.

While the appeal to this court from the district court's decision was pending, on September 21, 2005, this court reversed the Commission's finding that Philips committed patent misuse. See Philips I. We held that the Commission's finding that the tying practice was unlawful was "predicated on legal errors and on factual findings that were not supported by substantial evidence." Philips I, 424 F.3d at 1193, 1198. "Because the Commission did not address all of the issues presented by the administrative law judge's decision," we remanded to the Commission to determine "whether Philips's patents are enforceable and, if so, whether Philips is entitled to any relief from the Commission." Id. at 1198. After Philips I, this court denied rehearing en banc, and the Supreme Court denied certiorari. On remand to the Commission Princo urged that Philips unlawfully tied the Lagadec patent to the six essential patents (an issue raised before the Administrative Law Judge but not resolved by the Commission).

On January 17, 2006, the Commission sought comments from the parties to the investigation on how to proceed on remand, and on March 21, 2006, the Commission ordered the parties to submit responses to the comments of the other parties.

On March 27, 2006, this court vacated the district court's judgment against Princo and remanded the case for further consideration in light of Philips I and Illinois Tool Works Inc. v. Independent Ink, Inc., 126 S. Ct. 1281 (2006). See Philips II. The Philips II mandate issued on April 17, 2006. Princo renewed its motion to stay on May 2 and May 11, 2006. The district court denied the motions stating that it understood the Philips II mandate to compel it to continue with the proceedings. Princo filed a motion with this court to recall or clarify the mandate on June 23, 2006. On July 6, 2006, while the clarification request was pending before this court, the district court set a summary judgment briefing schedule. Then, on July 21, 2006, this court denied Princo's request to recall the mandate but explained that "[n]othing in our opinion or judgment, and thus nothing in the mandate to the district court, prohibits the district court from addressing any motion, request, or argument raised by the parties regarding section 1659." On July 27, 2006, Princo again moved for a stay, and on August 10, 2006, pursuant to the briefing schedule, both parties moved for summary judgment.

On October 24, 2006, the district court issued an order first granting Philips's motion for summary judgment on the patent misuse defense and then denying Princo's motion to stay the proceedings. On the merits, the district court considered whether Philips unlawfully tied the nonessential Lagadec patent to Philips's essential patents. The district court noted that "[a]lthough the allegedly nonessential patents at issue in Philips I were different, nothing offered by Princo regarding the Lagadec patent in the

present motions" suggested a different outcome on the patent misuse defense.  U.S. Philips Corp. v. Princo Corp., No. 02-246, slip. op. at 9 (S.D.N.Y. Oct. 24, 2006).  The district court then denied Princo's motion and granted Philips's motion for summary judgment because Princo "failed to raise a genuine issue of material fact that would establish patent misuse based on tying."  Id. at 11.  The district court's denial had the effect of determining that Princo was liable for patent infringement.  With respect to the stay, the district court explained that

> the only issue remaining in this litigation was Princo's patent misuse defense based on tying.  That defense has now been rejected by both the Federal Circuit, in Philips I, and by this Court, above.  Therefore, there are no issues before the [Commission] that affect the resolution of this case.

Id. at 12.  On December 1, 2006, the district court set a March 5, 2007, jury trial date on damages.

On November 21, 2006, Princo filed a petition for a writ of mandamus pursuant to 28 U.S.C. § 1651 asking this court to vacate the district court's October 24, 2006, order and stay the case under § 1659 until the Commission's related proceedings are complete.  We heard oral argument on the petition on January 17, 2007.  On January 19, we ordered the district court to stay the proceedings pending our decision on the petition, and on January 30 we ordered the district court to vacate any scheduling orders.

After the mandamus petition was filed, on February 5, 2007, the Commission rejected Princo's patent misuse defense and entered an exclusion order pertaining to the same six patents that are at issue before the district court.  That order will not become effective until April 6, 2007, which marks the expiration of the 60-day period for

Presidential review.  19 C.F.R. § 210.49(d).   When it becomes effective, that order is subject to appeal to this court.

DISCUSSION

I

This court plainly has jurisdiction to issue a writ of mandamus.  The All Writs Act, 28 U.S.C. § 1651(a), vests authority in "[t]he Supreme Court and all courts established by Act of Congress [to] issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  The authority of the courts of appeals to issue the writ "is restricted by statute to those cases in which the writ is in aid of [appellate] jurisdiction."  Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 25 (1943).  The authority is not limited to issuance of the writ where the court already had jurisdiction on appeal; rather, the authority "extends to those cases which are within its appellate jurisdiction although no appeal has been perfected."  Id.; see also Fed. Trade Comm'n v. Dean Foods Co., 384 U.S. 597, 603 (1966).  The Supreme Court has explained that "[t]he traditional use of the writ in aid of appellate jurisdiction both at common law and in the federal courts has been to confine the court against which mandamus is sought to a lawful exercise of its prescribed jurisdiction."  Cheney v. U.S. Dist. Court for D.C., 542 U.S. 367, 380 (2004) (quoting Roche, 319 U.S. at 26).

We have established that issues that would be "properly before the Federal Circuit on appeal[] are no less within our jurisdiction when raised by extraordinary writ." In re Regents of the Univ. of Cal., 964 F.2d 1128, 1130 (Fed. Cir. 1992).  We have also stated that "[b]ecause this court, and only this court, has jurisdiction over any appeal from a final decision in [patent cases], it has jurisdiction to hear and decide [mandamus]

petition[s]" in such cases. In re Newman, 782 F.2d 971, 973 (Fed. Cir 1986). Indeed, our jurisdiction over writs of mandamus in patent cases is exclusive, as our sister circuits have recognized. For example, in In the Matter of BBC International, LTD, 99 F.3d 811 (7th Cir. 1996), the Seventh Circuit declined to consider a mandamus petition in a patent case where the petition sought to direct the district court to transfer the case to a different district. The Seventh Circuit reasoned that our court alone had authority to consider the petition because "any appeals from a final decision . . . will go to the [F]ederal [C]ircuit." Id. at 813. The Seventh Circuit concluded that "[t]he presence of authority in the [F]ederal [C]ircuit means the absence of authority in the regional circuits; it just will not do to have two appellate courts with supervisory authority over the same case at the same time." Id. In Lights of America, Inc. v. U.S. District Court for the Central District of California, 130 F.3d 1369 (9th Cir. 1997), the Ninth Circuit also found that it did not have authority to consider a mandamus petition in a patent case where the petitioner challenged the district court's referral of the case to a special master. The Ninth Circuit explained that "[w]here jurisdiction in the district court is based in whole or in part on 28 U.S.C. § 1338, the Federal Circuit has exclusive jurisdiction over appeals. 28 U.S.C. 1295(a)(1). This includes writs of mandamus. . . . This is so even where the writ substantively does not implicate patent law." Id. at 1370.

The request for mandamus relief is determined under Federal Circuit law, except to the extent that underlying substantive issues may be governed by regional circuit law. In re Pioneer Hi-Bred Int'l, Inc., 238 F.3d 1370, 1373-74 (Fed. Cir. 2001). Here, it is clear that interpretation of § 1659 in the context of a patent infringement suit is a matter of Federal Circuit law. Thus, our law applies to all issues in this case.

II

Although Philips apparently agrees that we have authority to consider the petition because we have exclusive appellate jurisdiction over the underlying case, it argues that as a discretionary matter we should not exercise that jurisdiction. As the Supreme Court has stated, once a court has appellate jurisdiction over the case, the writ "may be granted or withheld in the sound discretion of the court." Roche, 319 U.S. at 25; see also Charles A. Wright et al., Federal Practice and Procedure § 3932 (2d ed. 1996). Philips urges, in particular, that under In re Innotron Diagnostics, 800 F.2d 1077, 1081 (Fed. Cir. 1986), we should decline to exercise that authority because the stay issue involved here is procedural and does not "directly implicate" substantive patent law.

In Innotron, we stated that "the court has carved out areas in which, on considerations of policy, comity, and its place in the judicial system, it should not entertain petitions for writs." Id. at 1082 (emphasis in original). Thus, we concluded that in patent cases we should entertain mandamus petitions only when "the patent jurisprudence of this court plays a significant role." Id. at 1083-84. Innotron does not, of course, imply that we lack authority to issue the writ.[2] The discretionary exception articulated in Innotron, if it exists at all, is exceptionally narrow. We have never held that we should decline to issue a writ because substantive patent law is not implicated. To the contrary, we have recognized that "[w]hen a petition is brought in connection with

---

[2]     See Lights of Am., 130 F.3d at 1371 ("The language in [Innotron] . . . merely reflects a (proper) reluctance to issue extraordinary writs. . . . As later Federal Circuit opinions illustrate, the Federal Circuit does have jurisdiction to exercise supervisory authority and is willing to do so where appropriate.") (internal citations and quotation marks omitted)); BBC Int'l, 99 F.3d at 813 ("Petitioners read [Innotron] as a denial of 'authority' to issue writs of mandamus, but this is not at all what the opinions says; there is a big difference between denying authority to act and denying an inclination to use authority.").

a case in [our] appellate jurisdiction, this court has conscientiously administered its responsibly." In re Regents, 964 F.2d at 1130 (citing In re Newman, 782 F.2d at 973). In a variety of contexts, when the substantive standards for the granting the writ are met, we have exercised our mandamus authority. See, e.g., In re United States, 463 F.3d 1328 (Fed. Cir. 2006) (right to reappointment of a bankruptcy judge); In re Echostar Commc'ns Corp., 448 F.3d 1294 (Fed. Cir. 2006) (attorney-client privilege); In re Pioneer Hi-Bred Int'l, 238 F.3d 1370 (attorney-client privilege); In re Spalding Sports Worldwide, Inc., 203 F.3d 800 (Fed. Cir. 2000) (attorney-client privilege); In re Regents, 964 F.2d 1128 (venue); In re United States, 877 F.2d 1568 (Fed. Cir. 1989) (authority of Claims Court to conduct proceedings abroad); In re Calmar, Inc., 854 F.2d 461 (Fed. Cir. 1988) (attorney sanctions); In re Newman, 782 F.2d 971 (spoliation of evidence); United States v. Boe, 543 F.2d 151 (1976) (jurisdiction of the Customs Court). Indeed in Innotron itself we entertained a petition seeking to compel a district court to try patent issues together with antitrust counterclaims. Innotron, 800 F.2d at 1084.

It is appropriate that we exercise mandamus jurisdiction here. Princo's petition is directly related to the conduct of the district court's patent infringement proceedings. The district court's proceedings also potentially have a direct effect on the Commission's investigation because the district court's decision on infringement might be entitled to collateral estoppel effect in the Commission proceedings. See Young Eng'rs, Inc. v. U.S. Int'l Trade Comm'n, 721 F.2d 1305, 1316 (Fed. Cir. 1983). We see no basis to refuse to exercise our mandamus authority in this case on the discretionary grounds referenced in Innotron. Accordingly, we will consider Princo's petition. We now turn to the merits.

III

The writ of mandamus is "an extraordinary remedy, to be reserved for extraordinary situations." Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 289 (1988); In re United States, 877 F.2d at 1571. The writ may only issue "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." Gulfstream, 485 U.S. at 289 (quoting Roche, 319 U.S. at 26). Under Federal Circuit law, the petitioner carries the burden of demonstrating that its right to issuance of the writ is "clear and indisputable" and that "it lacks adequate alternative means to obtain the relief sought." In re Regents of Univ. of Cal., 101 F.3d 1386, 1387 (Fed. Cir. 1996). We find that Princo has met its burden.

Princo argues that the district court erred under 28 U.S.C. § 1659(a) when it failed to stay its proceedings following the issuance of our mandate in Philips II. Under § 1659(a),

> at the request of a party to the civil action that is also a respondent in the proceeding before the Commission, the district court shall stay, until the determination of the Commission becomes final, proceedings in the civil action with respect to any claim that involves the same issues involved in the proceeding before the Commission.

We have not previously addressed whether the district court must continue to stay proceedings under § 1659 after an initial decision by the full Commission. Philips argues that we did so in Fuji Photo Film Co. v. Benun, 463 F.3d 1252, 1256 (Fed. Cir. 2006). There we stated that "section 1659 necessarily suggests that after a final determination by the Commission, the district court may resume its consideration of the civil action." Id. However, in that case, the proceedings before the Commission had

been completed and a general exclusion order was issued, and there was no pending appeal. There was no dispute that the proceedings before the Commission had "become final," and our decision in <u>Fuji</u> did not address the statutory construction question at issue here.

The question is the interpretation of the phrase "until the determination of the Commission becomes final" in § 1659. The relevant dictionary definition of "become[s]" in this context is "to pass from a previous state or condition and come to be." <u>Webster's Third New International Dictionary</u> 195 (2002). In other words, the stay continues until the Commission proceedings pass from a non-final state to a final state. But this does not resolve whether the statute is referring to finality at the Commission or finality including judicial review. The Supreme Court has advised us that language concerning finality must be construed in the context of the individual statute, <u>see</u> <u>Clay v. United States</u>, 537 U.S. 522, 527 (2003), but so far as we have been able to determine, both the Supreme Court and the other circuits have invariably interpreted "becomes final" or similar language to mean that the determination is final when it can no longer be appealed.

In <u>Clay</u>, the Supreme Court considered the limitations period for filing a motion for post conviction relief under 28 U.S.C. § 2255. Section 2255 provides that the one-year limitations period runs from "the date on which the judgment of conviction becomes final." § 2255, ¶ 6(1). In the context of collateral review of criminal convictions, the Court noted that it has consistently understood finality to mean that the time for appellate review has expired. <u>Clay</u>, 537 U.S. at 527. Thus, the Supreme Court held that a judgment of conviction becomes final "when the time expires for filing a petition

for certiorari contesting the appellate court's affirmation of the conviction." Id. at 525. So too the Third Circuit has considered the language of 21 U.S.C. § 841(b)(1)(B), which provides a maximum sentencing range for specified narcotics violations if one or more prior drug convictions "have become final."[3] See United States v. Allen, 566 F.2d 1193, 1194 (3d Cir. 1977). The court construed "have become final" to mean that the conviction was no longer subject to direct appellate review. Id. at 1195.

So too the Fourth, Fifth, Sixth, Ninth, and Eleventh Circuits have construed the "become final" language in § 6503 of the Internal Revenue Code ("Code"). Section 6503 provides that the limitations period on the making of assessments shall be suspended "if a proceeding in respect of the deficiency is placed on the docket of the Tax Court, until the decision of the Tax Court becomes final . . . and for 60 days thereafter." 26 U.S.C. 6503(a)(1). These cases have all held that a Tax Court decision does not "become final" until the appeal period has run. See Ripley v. Comm'r, 103 F.3d 332, 335 (4th Cir. 1996); United States v. Hans, 921 F.2d 81, 82 (6th Cir. 1990); Sherry Frontenac, Inc. v. United States, 868 F.2d 420, 424 (11th Cir. 1989); Cole v. United States, 863 F.2d 34, 36 (9th Cir. 1988); Sec. Indus. Ins. Co. v. United States, 830 F.2d 581, 586 (5th Cir. 1987).

---

[3] At the time Allen was decided, 21 U.S.C. § 841(b)(1)(B) (1977) provided that

> [i]f any person commits such a violation after one or more prior convictions of him for an offense punishable under this paragraph, or for a felony under any other provision of this subchapter or subchapter II of this chapter or other law of the United States relating to narcotic drugs, marijuana, or depressant or stimulant substances, have become final, such person shall be sentenced to a term of imprisonment of not more than 10 years, a fine of not more than $30,000, or both.

(emphasis added).

The "becomes final" language is also materially different from the language used in other statutes to denote finality in the first instance. For example, in 28 U.S.C. § 1291, the statute refers to "final decisions of the district courts," denoting finality at the trial level. See also 28 U.S.C. § 1295(a) ("The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction—(1) of an appeal from a final decision of a district court of the United States."). This difference in language is significant because, as the Supreme Court has stated, "[t]his Court presumes that, where words differ . . . , Congress has acted intentionally and purposely." Burlington N. & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2407 (2006).

IV

In addition to the statutory language, the purpose of § 1659 requires including appeals in the definition of "becomes final." The purpose of § 1659 is to prevent separate proceedings on the same issues occurring at the same time. The legislative history states that § 1659 was included as part of the Uruguay Round Agreements Act, P.L. 103-465, "to address the possibility that infringement proceedings may be brought against imported goods in two forums at the same time." H.R. Rep. No. 103-826(I), at 141 (1994), reprinted in 1994 U.S.C.C.A.N. 3773, 3913. Frequently this will mean that "a district court hearing an infringement case [will] stay its proceedings . . . with respect to any claim that involves the same issues as those pending before the Commission," id., but the statute's purpose—of avoiding litigation in two forums at once—is not limited to proceedings that are before the Commission itself but more broadly extends to proceedings before a court of appeals on review.

The view that a decision does not "become final" until the appeal period runs is reinforced by the statutory requirement that "after dissolution of a stay under subsection (a), the record of the proceeding before the United States International Trade Commission shall be transmitted to the district court and shall be admissible in the civil action." § 1659(b). The legislative history explains that "use of the Commission record could expedite proceedings and provide useful information to the court." H.R. Rep. No. 103-826(I), at 142, reprinted in 1994 U.S.C.C.A.N. at 3914. The Commission record will be most helpful to the district court if it is a complete record of the Commission proceedings including all remand proceedings. Finally, interpreting § 1659 to permit the district court proceedings to continue while the Commission proceedings are on appeal would result in cumbersome on-again, off-again stays. It is unlikely that Congress intended such a result.

We thus conclude that § 1659 requires that the stay of district court proceedings continue until the Commission proceedings are no longer subject to judicial review. Since the Commission proceedings here are still ongoing, the statute requires a stay of the pending district court infringement proceedings if the requirements of the statute are otherwise satisfied.

V

Philips nonetheless argues that we should deny Princo's petition on four alternative grounds.

First, Philips argues that the relief Princo seeks is meaningless because the only issue remaining before the district court is damages, an issue over which the Commission does not have authority. We reject this argument. The statute requires a

stay of "proceedings in the civil action with respect to any claim that involves the same issues involved in the proceeding before the Commission." The statute is not limited to a stay of any district court determination of <u>issues</u> pending before the Commission; it extends to any district court "proceedings" on a "claim" involving issues pending before the Commission. Here the infringement "claim" before the district court involves issues pending before the Commission. Damages proceedings relating to such a claim are "proceedings" that must be stayed. This again serves the purpose of the statute which is designed to bar proceedings in two fora at the same time.

Second, Philips argues that even considering the district court claims, those claims do not involve the same issues as were before the Commission, as required under § 1659 because <u>Philips I</u> foreclosed Princo from asserting its tying defense before the Commission. Again we disagree. Princo has asserted that Philips impermissibly tied the nonessential Langadec patent to the six essential patents in both the district court and before the Commission. The Commission's exclusion order pertains to the same essential patents at issue in the district court proceeding. As stated in the exclusion order, the Commission has determined that Philips's patents are enforceable under section 337 of the Tariff Act of 1930, 19 U.S.C. 1337, and that Princo cannot prevail under its patent tying defense. These issues are the same as those presented by the district court claim for patent infringement. Princo's entitlement to a stay is not dependent on a showing that it will prevail on the common issues.

Third, Philips argues that Princo waived its right to a stay by not timely pursuing relief. Section 1659 provides that a stay is only available if the party seeking the stay makes a motion within "30 days after the party is named as a respondent in the

proceeding before the Commission" or "30 days after the district court action is filed." § 1659(a). Philips argues that, under this limitations period, Princo's 2006 request for a stay was untimely because it was long after the suit was initially commenced in 2002. However, Princo timely moved for a stay in 2002 within 30 days of when it intervened in the Commission proceedings.

Moreover, Princo has diligently pursued the stay in the district court ever since it was lifted on March 16, 2004. Princo first requested that the stay be reinstated on April 16, 2004 (30 days after the stay was lifted). It then pursued the stay following issuance of the <u>Philips II</u> mandate by renewing its motion on May 2 and May 11, 2006. When the district court denied the motions because it misunderstood the <u>Philips II</u> mandate, Princo promptly filed a motion with this court to recall or clarify the mandate. After we explained that the mandate did not prevent the district court from considering a § 1659 stay, Princo again moved for a stay, which the district court denied after granting summary judgment in favor of Philips. Princo then timely filed this mandamus petition. In other words, Princo asked the district court to reinstate the stay four times, sought clarification from this court of its mandate, and filed the petition now before us. While Princo did not raise this issue on appeal in <u>Philips II</u>, Philips does not argue that the failure to argue for a stay in <u>Philips II</u> was a waiver. Therefore, Philips itself has waived any objection on this ground. <u>See</u> <u>Diebold, Inc. v. United States</u>, 891 F.2d 1579, 1584 (Fed. Cir. 1989).

Finally, Philips argues that Princo waived its right to file this petition by moving for summary judgment before the district court. Having moved for a stay, if the stay were denied, Princo cannot be faulted for filing a motion for summary judgment.

Accordingly, we find that Princo has demonstrated that its right to issuance of the writ is "clear and indisputable."  Princo's right to a stay during the damages phase of the district court proceeding cannot be vindicated by direct appeal from the ultimate damages determination since § 1659 is designed to prevent the ongoing damages proceedings from occurring at all.  Princo thus "lacks adequate alternative means to obtain the relief sought."  In re Regents of Univ. of Cal., 101 F.3d at 1387.

VI

Because we find that the Commission's determination has not yet "become final" under § 1659, Princo's May 2, 2006, motion for a stay should have been granted.  Any proceedings occurring after May 2, including the October 24 order granting Philips's motion for summary judgment, were in violation of the stay and must be set aside.  The stay must continue until the Commission order is no longer subject to appellate review.

Accordingly,

IT IS ORDERED THAT:

The petition for writ of mandamus is granted.  The district court is directed to stay its proceedings under 28 U.S.C. § 1659 until Commission proceedings on the same issues are final, including any appeals.  The stay shall be retroactive to May 2, 2006, and all district court orders issued after that date are therefore vacated.

FOR THE COURT

_____March 1, 2007_____                          s/Timothy B. Dyk__
            Date                                          Timothy B. Dyk
                                                         Circuit Judge

Misc. 841                              18