NOTE:  This order is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**In re: FEDEX CORPORATE SERVICES, INC.,**
*Petitioner*

---

2022-156

---

On Petition for Writ of Mandamus to the United States District Court for the Eastern District of Texas in No. 4:21-cv-00940-ALM, Judge Amos L. Mazzant, III.

---

**ON PETITION**

---

Before DYK, REYNA, and TARANTO, *Circuit Judges.*

PER CURIAM.

## O R D E R

FedEx Corporate Services, Inc. ("FedEx") petitions for a writ of mandamus directing the district court to transfer the case from the United States District Court for the Eastern District of Texas ("EDTX") to the United States District Court for the Western District of Tennessee ("WDTN") under 28 U.S.C. § 1404(a).  R2 Solutions LLC ("R2") opposes.

For the reasons provided below, we conclude that the district court erred in its analysis of the local interest factor and failed to provide a sufficient explanation for its conclusions regarding the witness-related factors.  In light of

those errors, we are unable to effectively conduct mandamus review on the present record. We accordingly vacate the district court's order denying transfer and remand for additional proceedings.

## BACKGROUND

R2 sued FedEx in EDTX alleging patent infringement. FedEx moved under § 1404(a) to transfer the case to WDTN, where it is headquartered and where accused products were researched, designed, and developed. R2 opposed but did not seek transfer-related discovery.

The district court denied the motion. The court concluded that access to proof slightly favored transfer, availability of compulsory process and court congestion favored transfer; local interest was neutral; and the convenience of willing witnesses and judicial economy weighed against transfer. Based on its evaluation and weighing of those factors, the court concluded that FedEx had not shown WDTN to be a clearly more convenient forum.

FedEx thereafter filed its petition. We have jurisdiction pursuant to 28 U.S.C. §§ 1651(a) and 1295(a)(1). *See In re Princo Corp.*, 478 F.3d 1345, 1351 (Fed. Cir. 2007) ("[B]ecause this court, and only this court, has jurisdiction over any appeal from a final decision in patent cases, it has jurisdiction to hear and decide mandamus petitions in such cases." (cleaned up)).

## DISCUSSION

To obtain the extraordinary remedy of a writ of mandamus, the petitioner must show: (1) there are no adequate alternative avenues for relief, (2) the right to issuance of the writ is clear and indisputable, and (3) issuance of the writ is appropriate under the circumstances. *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380–81 (2004).

When reviewing a § 1404(a) transfer decision on mandamus, we apply the law of the regional circuit, here, the

Fifth Circuit, *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008), and "[w]e review only for clear abuses of discretion that produce patently erroneous re-sults," *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc).  To enable that limited review, the district court should set forth a sufficient explanation of its findings and reasons for its transfer decision. *See id.* ("[W]e review carefully the circumstances presented to and the de-cision making process of the district court." (internal quo-tation marks and citation omitted)); *In re Archer Directional Drilling Servs., L.L.C.*, 630 F. App'x 327, 329 (5th Cir. 2016); *In re Schlumberger Tech. Corp.*, 648 F. App'x 420, 421 (5th Cir. 2016); *cf. Uniloc 2017 LLC v. Ap-ple, Inc.*, 964 F.3d 1351, 1364 (Fed. Cir. 2020).

Here, the district court's decision denying transfer lacks sufficient explanation for its findings and conclusions such that we cannot presently discern on limited manda-mus review whether the denial of transfer was a patently erroneous result.

A

We begin with the local interest factor, which reflects the importance of "having localized interests decided at home," rather than by "a community which has no relation to the litigation." *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004) (citations omitted).  We have reiterated that the focus of this factor looks to the "significant connections between a particular [forum] and the events that gave rise to a suit." *In re Apple Inc.*, 979 F.3d 1332, 1345 (Fed. Cir. 2020) (cleaned up).  We agree with FedEx that the district court clearly abused its discretion when it did not weigh this factor in favor of transfer.

The district court correctly found that WDTN, where FedEx is headquartered, had a significant local interest in resolving this patent infringement dispute because it is where accused products were researched, designed, devel-oped, and maintained by individuals who continue to live

and work in that community, Appx 11. *See In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021) (noting the significance of the fact that the accused products were researched, designed, and developed in the transferee forum); *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) (noting the significance when a case "calls into question the work and reputation of several individuals [in] th[e] district and who presumably conduct business in that community").

Nevertheless, the district court concluded that this factor was neutral because "R2 is located in Texas, and [is] the owner of the patent[s] at issue." Appx 11. But R2's general presence in Texas and mere ownership of the patents does not reflect a "significant connection[] between [EDTX] and the events that gave rise to [the] suit," *Apple*, 979 F.3d at 1345 (emphasis omitted). Indeed, there is no allegation that any research or development of the accused products or patented invention occurred in Texas, let alone EDTX, and none of the inventors is alleged to reside there. R2's only connection to EDTX is a small in-district office suite, established shortly before R2 brought suit in the district, shared with numerous other companies, and from which no officer or employee of R2 appears to regularly work. *See* Appx 120–21, 224, 409. "Thus, [R2's] presence in [EDTX] appears to be recent, ephemeral, and an artifact of litigation," *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010), which is properly afforded "little or no weight" under this factor, *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1320 (Fed. Cir. 2021). *See Samsung*, 2 F.4th at 1377–79; *In re Microsoft Corp.*, 630 F.3d 1361, 1364–65 (Fed. Cir. 2011).

Whatever *de minimis* local interest EDTX may have based on R2's recently established, ephemeral in-district work address, it is nowhere near comparable to the local interest of WDTN, where "events that gave rise to [the] suit" largely occurred. *Apple*, 979 F.3d at 1345 (emphasis

omitted).  This factor favors transfer, and the district court clearly abused its discretion in concluding otherwise.

B

For the witness-related factors, we conclude that, on the record before us, the district court failed to provide an adequate explanation for its conclusions.

We have recognized that the convenience of willing witnesses is an "important factor" for the § 1404(a) analysis and that the "district court should assess the relevance and materiality of the information the witness may provide," *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009), "even if it is not possible at present to specify [] how material their testimony might be to the yet-undeveloped issues in the case," *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014).  That was not done here.

Before the district court (and now before us), the parties vigorously disputed the relevance and materiality of the information certain willing witnesses might provide.[1] For example, FedEx identified six individuals in WDTN that it argued had relevant and material information covering the four accused systems.  Appx 93 (citing exhibits).

---

[1]    Indeed, there even appears to be a dispute as to whether any party was interested in potentially seeking testimony from individuals that R2 identified for consideration under this factor.  *Compare* Pet. at 25 (arguing R2 never "stated that it intended to seek testimony from" those individuals), *with* Resp. at 18 (responding that nothing "requir[es] R2 to state that it will seek discovery from [them]").  This factor considers the convenience of potential willing witnesses, which contemplates that a party is interested in potentially seeking their testimony.  *See Genentech*, 566 F.3d at 1343 ("[T]he *potential witness* [need not be shown to have] more than relevant and material information at this point in the litigation[.]" (emphasis added)).

R2 responded that some of those individuals do not have relevant information at least because "no one at FedEx researches, designs, or maintains the search functionalities of the [accused] Job Search Engine," Appx 232 (citation omitted), which FedEx contested as "not diminish[ing] the relevant knowledge [the WDTN witnesses for that system] do possess," Appx 420. Separately, R2 argued that it identified FedEx employees in EDTX that "possess[] knowledge of the accused Data Analytics Systems while touting their Hadoop, Spark, and/or Hive skill and expertise—all highly relevant," or otherwise "possess information relevant to the accused Data Analytic Systems." Appx 232–33. R2 further provided a declaration collecting the alleged names, title, location, and relevant knowledge of those individuals. Appx 248–52. FedEx then challenged the "relevance and materiality of the information" those individuals possess, Appx 421 (citation omitted), based largely on a supplemental declaration from a "manage[r of] the FedEx team responsible for . . . the [accused] Data Analytics System," Appx 429. The declaration stated that none of individuals identified by R2 "ever participated in the research, design, development, operation, management, or maintenance of the Data Analytics System," that there were "numerous FedEx employees across the United States" with similar general knowledge and experience as the individuals identified by R2, and that the witnesses FedEx identified in WDTN had a materially "greater understanding of the" accused system. Appx 431; *see* Appx 164–65. R2 responded that it at least "identified ten FedEx employees located in Plano who have material information as to the value and functionality of the accused Data Analytics Systems." Appx 439.

Despite these issues being at the very heart of the parties' disputes regarding this factor, the district court failed to make any finding or provide any explanation as to whether or how the potential witnesses had relevant and material information based on the record evidence.

Appx 7–8. Instead, the district court's opinion simply compared the number of individuals identified in each forum. And even that analysis failed to adequately explain the basis for the court's conclusions. The court found that FedEx identified six potential witnesses in WDTN and that while R2 had identified 18 FedEx employees in EDTX, the court agreed with FedEx that four of those individuals are not FedEx employees (not shown to be willing witnesses otherwise) and another four are in WDTN. Appx 7–8. This suggests that the district court found there to be ten willing witnesses in each forum (ten identified by R2 in EDTX; six identified by FedEx and four identified by R2 in WDTN; and four non-willing witnesses). Nonetheless, the court concluded that there were more willing witnesses in EDTX, Appx 8. That conclusion does not match our understanding of the court's apparent findings. This ambiguity further infects the analysis of the compulsory process factor since the court did not address the four additional non-willing witnesses that R2 alleged were subject to the court's compulsory process, Appx 438, although it may be unnecessary to resolve for that factor if the district court were to find the evidence (already found to be incorrect as to those individuals' employment status) does not sufficiently establish their location within the court's compulsory process power.

Under the circumstances here, we conclude that the district court failed to sufficiently explain the bases for its conclusions regarding the witness-related factors, and we decline to speculate as to how the district court might have resolved each of the numerous factual disputes.[2]

---

[2] To the extent the district court observed that "the convenience of the movant's employees and party witnesses is given little weight," Appx 7, such a categorical rule contravenes both the plain text of § 1404(a) ("For the convenience of *parties* and witnesses, in the interest of

## C

In light of these determinations, we conclude that it is presently "impossible for us to determine whether the district court clearly abused its discretion," *Archer*, 630 F. App'x at 329 (citing *Volkswagen*, 545 F.3d at 310–11). We are not prepared to put these issues aside and grant mandamus based solely on the other factors or deny mandamus based solely on the district court's conclusion that judicial economy considerations strongly disfavored transfer. Although the district court noted that R2 had filed earlier actions in EDTX, the court did not address whether there were circumstances that diminish the benefits of judicial economy from retaining the case. For example, related cases have been brought by R2 and parties in other forums, and this case involves a different, albeit overlapping, set of patents, different accused products, and a different defendant, making it potentially "likely that these cases will result in significantly different discovery, evidence, proceedings, and trial," *Samsung*, 2 F.4th at 1379–80 (citation omitted). Any incremental gain in judicial economy in this case may be insufficient to override the benefit of transfer if there has been a clear imbalance in the parties' respective presentations on the other transfer factors. *See, e.g., id.*

\*     \*     \*

---

justice, a district court may transfer [a case.]" (emphasis added)), and controlling caselaw, *see Juniper Networks*, 14 F.4th at 1319 ("We have previously rejected the district court's reliance on the proposition that the convenience-to-the-witnesses factor is attenuated when the witnesses are employees of the party calling them."). The court must engage in an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted).

IN RE: FEDEX CORPORATE SERVICES, INC.                    9

In further proceedings on FedEx's motion to transfer, the district court should provide an adequate explanation of its findings and rationale for its conclusions regarding both the willing witness and compulsory process factors and reconsider FedEx's motion in light of those determinations and consistent with this order.

Accordingly,

IT IS ORDERED THAT:

The petition is granted to the extent that the district court's order denying FedEx's motion to transfer is vacated and the case is remanded for further proceedings consistent with this order.

FOR THE COURT

October 19, 2022                    /s/ Peter R. Marksteiner
       Date                         Peter R. Marksteiner
                                    Clerk of Court